**Eileen DIMOND, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 83–1938.**

United States District Court,
District of Columbia.

Dec. 7, 1984.

John P. Coale, Washington, D.C., for plaintiffs.

Frederic W. Schwartz, Jr., Washington, D.C., for plaintiff Thomas Harley.

Judith W. Rogers, John H. Suda, William J. Earl, Beverly J. Burke, Corp. Counsel, Washington, D.C., for Dist. of Col., Marion Barry, Mayor of Dist. of Col., Margurite C. Stokes, Act., Supt. of Ins., John Touch-

stone, Act. Dir., D.C., Dept. of Transp., and Maurice Turner, Chief, Metro. Police Dept.

## MEMORANDUM

GASCH, District Judge.

This is an action challenging the District of Columbia Compulsory/No-Fault Motor Vehicle Insurance Act of 1982, D.C. Law 4–155, D.C.Code § 35–2101 *et seq.* (1984 Supp.) (Insurance Act). The plaintiffs include both residents and nonresidents of the District of Columbia. The defendants are the District of Columbia and individual officials of the District of Columbia Government.

Plaintiffs assert that the Insurance Act violates the District of Columbia Self-Government and Governmental Reorganization Act (Self-Government Act), D.C.Code 1–201 *et seq.*, and the United States Constitution. Specifically, they urge the Court to declare the Insurance Act unconstitutional because it violates due process and equal protection rights protected by the fifth amendment, impermissibly burdens interstate commerce, and interferes with plaintiffs' rights to contract, to travel and to petition the government.[1] Defendants have moved to dismiss plaintiffs' second amended complaint or in the alternative for summary judgment. Plaintiffs also have filed for summary judgment.

For the reasons set forth below, the Court grants defendants' motion to dismiss many of plaintiffs' claims for lack of standing and grants defendants' motion for sum-

mary judgment as to the constitutionality of the compulsory insurance requirements of the Insurance Act (Sections 4(a), 4(b)(1), and 7(c), D.C.Code §§ 35–2103(a), 35–2103(b)(1), 35–2106(c)). The Court further holds that plaintiff Harley is entitled to summary judgment as to the Insurance Act's provision barring recovery for noneconomic loss unless medical expenses exceed $5,000 (Section 6(b)(6), D.C.Code § 35–2105(b)(6)).

## DISCUSSION

### A. *Standing*

■ The threshold issue is whether any of the plaintiffs has standing to challenge the Insurance Act in federal court. The Supreme Court recently summarized the constitutional requirements for standing in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982):

> Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision...."

454 U.S. at 472, 102 S.Ct. at 758.[2] The plaintiff's injury or threat must be "distinct and palpable,"[3] and "real and immediate," not "conjectural or hypothetical."[4]

---

**1.** Plaintiffs also claim that the Insurance Act is null and void because the Self-Government Act, the source of authority for enacting the Insurance Act, is itself unconstitutional. Relying on *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), plaintiffs argue that the Home Rule Act permits Congress to veto bills of the District of Columbia City Council without presentment to the President as required by Art. 1, § 7 of the Constitution. Legislation recently enacted, however, amends the Self-Government Act to provide for the disapproval of City Council action by joint resolution and presentment to the President within a specified time period. Pub.L. No. 98–473, Cong.Rec. H 11894 (Oct. 10, 1984). The new law also deems valid, in accordance with the provisions of the new law, all

laws passed by the Council of the District of Columbia prior to the effective date of the new legislation. Accordingly, the Court need not reach the merits of plaintiffs' challenge to the legislative veto provision of the Self-Government Act.

**2.** *Quoting Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979) and *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924–25, 48 L.Ed.2d 450 (1976).

**3.** *Allen v. Wright*, —— U.S. ——, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)).

**4.** *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (quoting *Golden*

In addition to the constitutionally-mandated requirements for standing, federal courts have adopted a set of prudential principles for guidance in determining whether the federal judicial power should be invoked. *Valley Forge Christian College, supra,* 454 U.S. at 474–75, 102 S.Ct. at 759–60. Courts, for example, have refrained from exercising jurisdiction over "abstract questions of wide public significance" which amount to "generalized grievances," [5] and have required that the plaintiff's claim of injury arguably fall within the "zone of interests to be protected or regulated by the statute or constitutional guarantee in question." [6]

■ Applying the foregoing analysis to the particular facts in this case, the Court concludes that plaintiff Harley has standing to challenge Sections 6(a) and 6(b)(6) of the Insurance Act, which bar suits against tortfeasors for noneconomic loss unless the victim's medical expenses exceed $5,000 or other specified exceptions apply. Plaintiff Harley, a resident of the District of Columbia, purchased motor vehicle insurance as required by the Insurance Act. He alleges that he sustained physical injuries in a motor vehicle accident in the District of Columbia after the Insurance Act became effective. He avers that his medical expenses will likely not exceed the $5,000 threshold and that he likely does not qualify under any other exceptions to the Act which would allow him to sue the alleged tortfeasor for pain and suffering which is described as noneconomic loss. Plaintiff Harley's apparent inability to sue constitutes injury in fact, is traceable to Sections

6(a) and 6(b)(6) of the Insurance Act, and is likely to be redressed by a favorable decision.

■ Plaintiff Lisa Van Susteren is a resident of the District of Columbia and a licensed driver. As a District of Columbia motor vehicle owner, she is required under Section 7(c) of the Insurance Act to purchase no-fault coverage for accidents that may occur outside of the District of Columbia. Plaintiff Van Susteren has standing to challenge the constitutionality of this compulsory requirement of the Insurance Act. The required purchase of no-fault insurance is a discernible and definable economic injury sufficient to satisfy the injury-in-fact test, it can be traced to Section 7(c) of the Insurance Act, and it can likely be redressed by a decision rendering that provision invalid. Furthermore, as a motor vehicle owner residing in the District of Columbia, plaintiff Van Susteren clearly falls within the zone of interests to be regulated by the Insurance Act.

■ Plaintiffs Eileen Dimond and Henry Brent are residents of the State of Maryland and Virginia, respectively, and are licensed drivers. They challenge the constitutionality of Section 4(b)(1) of the Insurance Act on a number of grounds. That section requires nonresidents of the District of Columbia whose motor vehicles are driven in the District to maintain auto insurance coverage that meets the requirements of the Insurance Act. With the exception of their first amendment claims,[7]

---

*v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969)). Furthermore, plaintiffs must establish standing to raise each of the statutory challenges they assert. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975).

**5.** *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (quoting *Warth v. Seldin,* 422 U.S. at 499–500, 95 S.Ct. at 2205–06); *accord, Allen v. Wright, supra,* 104 S.Ct. at 3324–25.

**6.** *Id.* (quoting *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct.

827, 829–30, 25 L.Ed.2d 184, (1970)); *accord, Allen v. Wright, supra,* 104 S.Ct. at 3325.

**7.** Plaintiffs Dimond and Brent lack standing to complain that Section 4(b)(1) interferes with their first amendment rights to enter the District of Columbia to petition the Government or that the threat of a fine or imprisonment for failure to comply with such provision has a chilling effect on their ability to enter the District to exercise their first amendment rights. Their alleged injuries are merely speculative and nonspecific; plaintiffs Dimond and Brent have not shown that they in fact have been precluded from exercising their first amendment rights in

plaintiffs Dimond and Brent have standing to challenge the constitutionality of Section 4(b)(1). The required purchase of additional insurance satisfies the injury in fact test, and the other constitutional requirements for standing as well.

■ Plaintiffs claim that the Insurance Act is null and void because the District of Columbia City Council failed to comply with the procedural requirements of the Self-Government Act, which requires the City Council to read a bill twice in substantially the same form before passage. Section 412(a), D.C.Code § 1–229(a). None of the plaintiffs has standing to challenge the Insurance Act on this ground. As the Supreme Court recently explained, "an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, — U.S. —, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984). Plaintiffs' claim is nothing more than a generalized grievance alleging abstract injury in nonobservance of the Self-Government Act. *See Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 217, 223 n. 13, 94 S.Ct. 2925, 2930, 2933 n. 13, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 176–77, 94 S.Ct. 2940, 2946–47, 41 L.Ed.2d 678 (1974).

■ There are a host of other provisions of the Insurance Act for which the plaintiffs do not have standing to challenge because none of the plaintiffs has been affected by the provisions or has shown any imminent threat of injury resulting from application of these provisions.[8] For example, plaintiffs challenge the constitutionality of Section 11(b)(4) of the Insurance Act, which deducts certain government benefits that an accident victim receives from the benefits the victim receives under the no-fault insurance policy. D.C. Code § 35–2110(b)(4). None of the plaintiffs, however, has had a claim for benefits reduced because of government benefits, nor has any plaintiff been imminently threatened with such a reduction.[9]

### B. *Bar to Recovery for Pain and Suffering (Section 6(b)(6))*

Section 6 of the Insurance Act precludes persons injured in motor vehicle accidents from suing the alleged tortfeasor for injuries covered by the Act's personal injury protection benefits. There are a number of exceptions to this limitation on the right to sue. One of those exceptions provides:

A person may be liable for any noneconomic loss if medical expenses of a vic-

---

the District. Furthermore, "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972). There must be some concrete harm, either past or immediately threatened, apart from the "chill" itself. *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378, 1380 (D.C.Cir.1984). Plaintiffs, however, have not personally been threatened with sanctions for noncompliance with the Insurance Act, nor have they shown that such threats are imminent.

8. *E.g.,* immobilization of motor vehicles and suspension of driving privileges (D.C.Code § 35–2103(b)(2) and (d)(2)(A)); personal injury protection benefits for reasonably necessary expenses (D.C.Code § 35–2104(c)(1) ); liability for damages for medical and rehabilitation expenses and work loss (D.C. Code § 35–2105(b)(1)); required and optional insurance

and benefits (D.C.Code § 35–2106); immunity for disclosure of cancellation or nonrenewal (D.C.Code § 35–2109(j)); reduction for certain benefits (D.C.Code § 35–2110(b)); notice to insured of filing of civil action (D.C.Code § 35–2111(a)(2)); statute of limitations (D.C.Code § 35–2111(a)); taxicab exemption (D.C.Code § 35–2111(e)); applicability of the Insurance Act to Washington Metropolitan Area Transit Authority; recovery for mental impairment (D.C.Code §§ 35–2102(19), 2105(b)(4), and 2111(b)); and insurance rate making (D.C.Code § 35–1703).

9. Even plaintiffs acknowledge that none of them has been injured or imminently threatened with injury by application of Section 6 of the Insurance Act, which plaintiffs claim precludes recovery for mental impairment that is not medically demonstrable in violation of their due process rights. Plaintiffs' post-hearing memorandum of law on standing, filed June 22, 1984.

tim or his or her survivors exceeds $5,000, inclusive of diagnostic x-ray costs....

Section 6(b)(6), D.C.Code § 35–2105(b)(6). "Noneconomic loss" is defined as:

pain, suffering, inconvenience, physical or mental impairment, and other nonpecuniary damage recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle.

Section 3(19), D.C.Code § 35–2102(19).

Plaintiff Harley contends that because his medical expenses for injuries suffered in an auto accident will likely not exceed $5,000, Section 6(b)(6) bars him from suing the alleged tortfeasor for pain and suffering and other noneconomic loss that he has incurred in violation of equal protection principles under the fifth amendment. Specifically, he claims that the provision establishes an arbitrary and irrational classification between accident victims whose medical expenses exceed $5,000 and those whose expenses fall below that threshold amount.

▮ The test for determining whether a legislative enactment that distinguishes between different groups of persons violates equal protection principles is whether "the legislative classification ... itself is rationally related to a legitimate governmental interest." *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).[10] In making such determinations, courts must not substitute their social and economic beliefs for the judgment of legislatures which have broad powers to experiment with economic problems. *Ferguson v. Skrupa,* 372 U.S. 726, 730–31, 83 S.Ct. 1028, 1031–32, 10 L.Ed.2d 93 (1963); *see Sproles v. Binford,* 286 U.S. 374, 388–89, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932). With this principle in mind, the Court concludes that Section 6(b)(6) of the Insurance Act violates equal protection rights embodied in the due process clause of the fifth amendment.

To apply the equal protection analysis, the Court must first determine the purpose of the statute in question. The Insurance Act is designed to remedy deficiencies in motor vehicle insurance policies in the District. The City Council found that under the former system, auto accident victims often received no compensation or inadequate compensation for their losses in part because of the many uninsured motorists in the District and the expense and delay in requiring policyholders involved in accidents to establish the liability of the alleged tortfeasor in order to satisfy the prerequisites for compensation. The Insurance Act, Section 2(a), D.C.Code § 35–2101(a). As a result, the City Council passed the Insurance Act with the express purpose of providing "adequate protection for victims who are injured in the District or who are injured while riding in motor vehicles registered or operated in the District." Section 2(b), D.C.Code § 35–2101(b).

Adequate protection is to be provided at reasonable and affordable rates.[11] Although the legislative history on Section 6(b)(6) is relatively sparse, the City Council apparently reasoned that elimination of the right to recover for "small and speculative claims for noneconomic loss in favor of basic, certain and prompt protection"[12] would reduce litigation costs, and in turn insurance costs. As a result, insurance

**10.** Although the fifth amendment does not contain an equal protection clause, it forbids discrimination that is "so unjustifiable as to be violative of due process." *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533 n. 5, 93 S.Ct. 2821, 2825 n. 5, 37 L.Ed.2d 782 (1973), quoting *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964).

**11.** Report from the Chairperson of the Committee on Public Services and Consumer Affairs to District of Columbia City Council Members on Bill 4–140, "Compulsory Motor Vehicle Insurance Act of 1981," at 2 (Feb. 16, 1982), Attachment B to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment and in Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss or for Summary Judgment.

**12.** Memorandum of Points and Authorities in Support of Motion of Defendants to Dismiss Plaintiffs' Second Amended Complaint or in the Alternative, for Summary Judgment, at 38.

rates would be "reasonable and affordable." The record before the Court is devoid of any basis for the conclusion that a claim for pain and suffering by a motor vehicle accident victim whose medical expenses total, for example, $4,500, is "small and speculative" and does not involve serious injury. By setting an unreasonably high threshold of $5,000 in medical expenses, the City Council unreasonably barred motor vehicle accident victims who suffer serious injuries from recovering for pain and suffering and other noneconomic loss. Such provision is not rationally related to the purpose of providing "adequate protection" to motor vehicle accident victims.

State court decisions upholding the constitutionality of other no-fault insurance provisions that bar recovery by an injured party for intangible damages unless the individual's medical expenses exceed a specified amount are readily distinguishable from the case at bar. Those cases involved threshold limits ranging from $500 to $1,000, amounts far less than the $5,000 limit set by the Insurance Act.[13] Moreover, such cases were based on the respective legislatures' findings that the threshold limit would eliminate expensive litigation only for minor claims for nonserious injuries, while maintaining protection for serious injuries.[14] The Insurance Act's $5,000 limitation goes far beyond elimination of minor claims for nonserious injuries.

Given the Insurance Act's objective of providing adequate protection for motor vehicle accident victims at a reasonable cost, the Court finds that the $5,000 threshold is not limited to barring recovery for pain and suffering for minor injuries. Accident victims will not obtain adequate protection. Accordingly, the provision is not rationally related to the purpose of the statute in violation of equal protection principles of the fifth amendment.[15]

### C. Compulsory Insurance Requirements Applicable to Residents of the District of Columbia

Plaintiff Susteren, a resident of the District of Columbia, challenges the compulsory insurance requirements of Sections 4(a) and 7(c) of the Insurance Act as beyond the legislative powers of the District of Columbia City Council, an unconstitutional burden on interstate commerce, and a denial of due process. Section 4(a) requires residents of the District of Columbia to maintain certain insurance, including out-of-state coverage, if they own a motor vehicle which must be registered in the District or if they are required to obtain a reciprocity sticker in the District.[16] Section 7(c) of the Insurance Act requires insurance companies doing business in the District to include out-of-state liability coverage in their

---

13. *Montgomery v. Daniels,* 38 N.Y.2d 41, 378 N.Y.S.2d 1, 340 N.E.2d 444 (1975) ($500 limit); *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291 (1974) ($500 limit); *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975) ($750 limit); *Lasky v. State Farm Insurance Co.,* 296 So.2d 9 (Fla.1974) ($1,000 limit).

Defendants' attempt to distinguish between the $750 threshold in *Singer v. Sheppard, supra,* for example, and the Insurance Act is without merit. Although defendants claim that it is reasonable the City Council considered the prevailing costs of medical care in 1983 and the cost of living in the District of Columbia before establishing the $5,000 threshold amount, defendants cannot point to any evidence in the record to support such claim.

14. *Id.*

15. In light of the Court's holding, the Court does not address plaintiffs' claim that the threshold limitation requirement in Section 6(b)(6) de-

prives this Court of jurisdiction in violation of Section 602(a)(8) of the Self-Government Act, which prohibits the District of Columbia City Council from enacting any act relating to the United States District Court for the District of Columbia.

16. Section 4(a) provides:

Each owner of a motor vehicle required to be registered or obtain a reciprocity sticker in the District shall maintain insurance for payment of the benefits required by this chapter for personal injury protection, property damage liability protection, 3rd-party liability coverage for accidents occurring outside of the District, and uninsured motorist protection. This insurance shall be in effect continuously during the motor vehicle's period of registration or reciprocity.

D.C.Code § 35–2103(a).

personal injury liability insurance policies.[17] The compulsory requirements of the Insurance Act are within the legislative authority of the City Council and are constitutional.

 Plaintiff Susteren claims that the out-of-state coverage provisions violate Section 602(a)(3) of the Self-Government Act, which prohibits the enactment of "any act ... which is not restricted in its application exclusively in or to the District...." D.C.Code § 1–233(a)(3). The Court disagrees. Section 4(a) of the Insurance Act applies only to District of Columbia residents who own a motor vehicle required to be registered or who are required to obtain a reciprocity sticker. It is a legitimate exercise of a state's police power to require no-fault insurance as a condition to the operation of a motor vehicle.[18] Likewise, it is within the District of Columbia's power to prescribe conditions for registration of motor vehicles, including purchase of out-of-state liability coverage, and to require insurance companies doing business in the District to provide certain coverage.[19] Such requirements further the purpose of the Insurance Act—adequate protection for victims injured in the District or while riding in motor vehicles registered or operated in the District. Section 2(b), D.C.Code § 35–2101(b).

 Plaintiff Susteren's claim that Sections 4(a) and 7(c) of the Insurance Act burden interstate commerce in violation of the Commerce Clause equally is without merit.[20] She argues that the compulsory requirement to obtain out-of-state liability coverage in effect penalizes her for driving outside of the District of Columbia because she must pay higher insurance rates for the additional coverage.

 The Supreme Court has established a balancing test to determine whether a state statute violates the Commerce Clause: "[w]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 441, 98 S.Ct. 787, 794 (1978) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)). Under this test, state highway safety statutes have a strong presumption of validity. *Id.* 434 U.S. at 444, 98 S.Ct. at 795–96; *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 524, 79 S.Ct. 962, 965, 3 L.Ed.2d 1003 (1959).

Applying the Commerce Clause analysis to the compulsory insurance requirements of the Insurance Act, the Court finds that such provisions do not unconstitutionally burden interstate commerce. As explained above, Congress delegated to the District of Columbia broad powers to regulate insurance. Even if national and local inter-

---

**17.** Section 7(c) provides in pertinent part:
Each insurer selling or offering to sell personal injury protection in the District shall include with that insurance out-of-state liability coverage. Out-of-state liability coverage shall provide that any liability to an insured to pay for personal injury, arising from an accident outside of the District, in accordance with applicable law, shall be paid by the applicable insurer up to the amount established in the policy.
D.C.Code § 35–2106(c). Although this provision is directed to insurers doing business in the District of Columbia, it directly affects District of Columbia residents who are required under the Insurance Act to obtain no-fault insurance because personal injury liability insurance policies sold in the District must include out-of-state liability coverage.

**18.** *See Shavers v. Kelley*, 402 Mich. 554, 267 N.W.2d 72, 85 (1978), *cert. denied sub nom.*, *Allstate Ins. Co. v. Kelley*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979); *Montgomery v. Daniels*, 38 N.Y.2d 41, 378 N.Y.S.2d 1, 340 N.E.2d 444, 452 (1975); *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291, 1310 (1974).

**19.** The District of Columbia City Council has a broad delegation of police power from Congress to regulate insurance. *Firemen's Insurance Company of Washington, D.C. v. Washington*, 483 F.2d 1323, 1327 (D.C.Cir.1973).

**20.** The Commerce Clause grants Congress the power "[t]o regulate Commerce ... among the several states...." United States Constitution, Art. I, § 8, cl. 3.

ests conflict in this area, the minor burden on interstate commerce imposed by requiring District of Columbia residents to purchase out-of-state liability insurance is far outweighed by the District's legitimate interest in providing adequate protection to motor vehicle accident victims who are injured while riding in motor vehicles registered or operated in the District. The District of Columbia City Council determined that compulsory purchase of no-fault insurance was necessary because of a motor vehicle's great potential for causing personal injury. Section 2(a), D.C. Code § 35–2101(a).

■ Plaintiff Susteren next argues that Sections 4(a) and 7(c) of the Insurance Act deny her substantive due process guaranteed by the fifth amendment because she is deprived of the freedom to choose the insurance protection best suited to her needs. This claim is totally without merit. Plaintiff offers no support whatsoever for her claim that freedom to choose a suitable type of insurance coverage is a previously recognized constitutional right. Indeed, state courts that have addressed the issue have consistently upheld the power of state legislatures to require motorists to obtain liability insurance. *See Shavers v. Kelley,* 402 Mich. 554, 267 N.W.2d 72, 85 (1978); *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291, 1306 (1974); *see also Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) (dicta).

### D. *Compulsory Insurance Requirements Applicable to Nonresidents of the District of Columbia*

Section 4(b)(1) of the Insurance Act requires District of Columbia nonresidents whose motor vehicles are operated in the District to maintain insurance that meets the requirements of the Insurance Act.[21] Plaintiff Dimond claims that this provision creates an impermissible burden on interstate commerce, violates her constitutional right to travel freely interstate, and interferes with her right to contract in violation of the Contract Clause of the United States Constitution.

■ Section 4(b)(1) does not impose an unconstitutional burden on interstate commerce by imposing, as plaintiff Dimond claims, higher insurance premiums for additional insurance coverage for driving in the District. The District's interest in providing adequate protection for motor vehicle accident victims who are injured in the District outweighs whatever incidental effect, if any, this provision has on interstate commerce. See Part C, *supra.* The City Council found that before the Insurance Act was passed, many motor vehicle operators in the District had no motor vehicle insurance or other financial sources sufficient to pay for losses resulting from an accident in the District. Section 4(b) is reasonably intended to remedy this serious deficiency in the prior law.

Plaintiff Dimond's claim that Section 4(b)(1) unconstitutionally infringes upon her right to travel interstate also must fail. She contends that the proper test for determining whether a statute violates the fundamental right to travel is whether the statute is necessary to promote a compelling state interest. The Supreme Court has applied the compelling state interest standard to invalidate state statutes imposing durational residency requirements for eligibility for welfare benefits, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), for voting, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), and for free non-emergency medical care, *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). As the Court in *Shapiro* explained, "any classification which serves to penalize the exercise of [a

---

**21.** Section 4(b)(1) provides:

A person who is not a resident of the District who owns a motor vehicle shall not operate the motor vehicle, or permit the motor vehicle to be operated in the District, unless insurance for payment of the benefits required by this act for personal injury protection, property damage liability protection, and uninsured motorist protection is provided and maintained during the time that the motor vehicle is present in the District.

D.C.Code § 35–2103(b)(1).

constitutional] right, unless shown to be necessary to promote a *compelling* government interest, is unconstitutional." 394 U.S. at 634, 89 S.Ct. at 1331 (emphasis in original).

■ The Court agrees with defendants that the compelling state interest test is inapplicable to Section 4(b)(1). Such provision does not establish a classification, such as durational residency requirements, which operates to penalize persons from traveling freely interstate. Any person, whether a resident or non-resident of the District of Columbia, must have certain insurance coverage as a precondition to operating a motor vehicle in the District of Columbia. Furthermore, Section 4(b)(1) does not amount to a "penalty" for traveling into the District. It does not deny a fundamental political right as in *Dunn,* nor does it deny the basic necessities of life as in *Shapiro* and *Maricopa County.*[22] Travel by motor vehicle on a state's highways is subject to reasonable regulation and applying the rational relationship test, the Court finds that the requirement that nonresidents maintain certain insurance coverage if they operate a motor vehicle in the District of Columbia is reasonable and rationally related to the District's legitimate interest in protecting persons who are injured in motor vehicle accidents in the District.

■ Lastly, plaintiff Dimond claims that Section 4(b)(1) imposes an unconstitutional burden on her right to contract for the type of insurance coverage she prefers in conformance with the law of the state where she resides. To determine whether the Insurance Act violates the Contract clause of the United States Constitution,[23] the Court must inquire whether the Insurance Act "operate[s] as a substantial impairment of a contractual relationship," and if so, whether there is a legitimate and significant public purpose behind the Act.

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–13, 103 S.Ct. 697, 704–06, 74 L.Ed.2d 569 (1983); *Allied Structural Steel Company v. Spannaus,* 438 U.S. 234, 244, 247, 249, 98 S.Ct. 2716, 2722–25, 7 L.Ed.2d 727 (1978). In determining the extent of the impairment, the Court must consider that the District of Columbia has regulated motor vehicle insurance in the past. *See Energy Reserves Group, Inc., supra,* 459 U.S. at 411, 103 S.Ct. at 704–05; *Allied Structural Steel Company, supra,* 438 U.S. at 242, n. 13, 98 S.Ct. at 2721, n. 13.

■ Plaintiff Dimond's claim is without merit. There is no evidence before the Court of substantial impairment of plaintiff Dimond's contractual rights. Even if this were so, which is especially doubtful in light of the fact that motor vehicle insurance traditionally has been subject to substantial regulation, it is clear that the District of Columbia City Council has a significant and legitimate public purpose in requiring nonresidents driving in the District to obtain the same motor vehicle insurance coverage required of District of Columbia residents. Such requirement is a necessary and reasonable means of ensuring that victims of motor vehicle accidents in the District receive compensation for their losses, regardless of whether the driver at fault is a resident or nonresident.

## CONCLUSION

The compulsory insurance requirements of the Insurance Act are a legitimate exercise of the legislative authority of the District of Columbia City Council and do not impermissibly burden interstate commerce or violate substantive due process or the right to travel, to contract, or to petition the government for redress. Elimination of the right of a motor vehicle accident victim to sue for non-economic loss solely because the victim's medical expenses are

---

**22.** Significantly, the Supreme Court has emphasized that even some durational residency requirements may not be penalties. *Memorial Hospital v. Maricopa County,* 415 U.S. at 258–59, 94 S.Ct. at 1082–83.

**23.** The Contract clause provides: "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const., Art. 1, § 10, cl. 1.

**530**

less than $5,000, however, violates equal protection principles under the fifth amendment. An unreasonably high threshold limitation of $5,000 in medical expenses goes well beyond elimination of unnecessary litigation of minor claims and is not rationally related to the Insurance Act's expressed purpose of providing adequate protection for motor vehicle accident victims who are injured in the District of Columbia or while riding in motor vehicles registered or operated in the District. As the provisions of the Insurance Act are severable, see note to Section 2, D.C.Code § 35–2101, the invalidity of Section 6(b)(6), D.C.Code § 35–2105(b)(6), does not affect the validity of any other provision that can be given effect without such section. Accordingly, the Court grants summary judgment for defendants as to the compulsory insurance requirements of the Act, and grants summary judgment for plaintiffs as to Section 6(b)(6) of the Act.