TEXACO, INC. *v.* VANDEN BOSCHE, ET AL.

[No. 261, September Term, 1965.]

*Decided April 27, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, BARNES and McWILLIAMS, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned.

*James J. Cromwell,* with whom were *William G. Clark* and *Clark & Cromwell* on the brief, for appellant.

Submitted on the brief by *Robert A. Gingell, Lawrence E. Speelman* and *Ritterpusch & Gingell,* for Albert B. Seitz, III, part of appellees; by *J. Graham Walker* for Richard P. Vanden Bosche, and others, other appellees; and by *Leo Stepper,* pro se, other appellee.

HAMMOND, J., delivered the opinion of the Court.

Virginia has a statute which imposes personal liability on the directors, officers and agents of a foreign corporation that has not obtained a certificate of authority to transact business in Virginia "for any contracts made or to be performed in this State and any torts committed in this State between the time when it began to transact business in this State and the date when it obtains a certificate of authority." 3 Code of Virginia (1964 Replacement Vol.), § 13.1-119. Texaco, Inc., brought an action in the Circuit Court for Montgomery County, Maryland, under the Virginia statute against various officers and directors of Neal Construction Company, Inc., a Maryland corporation, seeking damages from them personally for failure of Neal fully to perform and for defective part performance of a contract between Texaco and Neal to erect a filling station in Fairfax County, Virginia. The defendants variously demurred to the declaration for that the suit was to enforce a penalty under a law which had no extra-territorial effect, there was no allegation the defendants or Neal transacted any business in Virginia and no allegation that any acts or omissions relied on as having damaged Texaco occurred in Virginia at a time when Neal was without a certificate of authority.

Judge Shure sustained the demurrers, holding that the statute was intended to have and did have force and effect only in Virginia, saying:

"[S]ince the statute derives its force from the legislature [of Virginia], its effect must be limited to [its] * * * boundaries * * *. The legislature has no power to make officers or agents, other than those within its jurisdiction, liable; and such an attempt to impose liability upon the citizens and residents of other states * * * cannot succeed in the State of Maryland * * *."

Judge Shure also found support for his position in language of the Virginia statute that "suits, actions and proceedings may be begun against it [the corporation transacting business without a certificate] by serving process on any such director, officer or agent of the corporation, or, if none can be found, on the clerk of the Commission." (The statute further provides that the transaction of business without a certificate constitutes the clerk of the Corporation Commission the attorney of the corporation to receive service of process). He found this language to indicate that suit must be filed in Virginia.

We agree that the demurrers to the declaration rightly were sustained, although not for the reasons assigned by Judge Shure. The declaration alleges that on May 8, 1964, Neal entered into a contract with Texaco to construct a filling station in Virginia and "that said Neal * * * breached the said contract" (in ways specified), that Neal applied for a certificate of authority on July 20, 1964, and was granted one on July 30, 1964, "being subsequent to May 8, 1964," that Neal, a foreign corporation, did not secure a certificate "until after the date of the contract to be performed in the State of Virginia," and that all the officers and directors of Neal are personally liable to Texaco for the damages flowing from Neal's defaults. There is no allegation that the contract was made in Virginia and no allegation that Neal transacted business in Virginia or breached its contract which it was to perform in Virginia before it was issued a certificate of authority on July 30, 1964. These allegations do not state a case within the provisions of the statute which assigns personal liability to directors, officers and agents of a delinquent foreign corporation only for "contracts made or to be performed * * * between the time when it began to transact business * * * and the date when it obtains a certificate of authority." If it be assumed that the Virginia statute should be given effect in Maryland and any liability it imposes enforced in the courts of Maryland, the declaration fails to state a cause of action in that there is no allegation that Neal did anything it should not have or failed to do anything it should have in Virginia before it obtained the required certificate of authority.

Our holding on this point makes it unnecessary to decide, and

we do not, whether our assumption that the Virginia statute should be given force and effect in Maryland is valid and sound, although there are persuasive indications to which we shall refer that it is.

Earlier Maryland cases are not among these indications. When they were decided, as is true now, a transitory cause of action could, and generally would, be decided outside the jurisdiction of its origin by any court in any other forum which had jurisdiction of the subject matter and the parties. Then, as now, the host forum did not have to open its courts (a) to enforce criminal or penal laws of another state, (b) if it had a strong public policy against the provisions or requirements of, or the rights created by, the foreign law, (c) where the foreign law utilized a special or unusual form of proceedings or remedy which the host state cannot provide, or (d) where, under the doctrine of forum non conveniens, there is no substantial or legitimate basis for the plaintiff's choice of forum and an appropriate forum is otherwise available.

In *First Nat. Bank v. Price,* 33 Md. 487, the plaintiff sued in Maryland to recover from officers and directors of a Pennsylvania corporation personally a debt of the company. This Court held that the case stated was within the statute and the plaintiff could have prevailed in Pennsylvania, but that the personal liability imposed by the statute was in the nature of a penalty and not enforceable in Maryland. There was a similar holding in *Attrill v. Huntington,* 70 Md. 191, a suit in Maryland on a New York judgment rendered on a New York statute which imposed personal liability for corporate debts if a material false representation in any certificate, report or public notice of the corporation was made by corporate officers over their signature. The Supreme Court reversed in *Huntington v. Attrill,* 146 U. S. 657, 36 L. Ed. 1123, holding that penal laws properly are only those imposing punishment for an offense committed against the state, the test being whether the purpose is to punish an offense against the public justice or afford a private remedy. The Court held that the New York statute was not a penal law and that the full faith and credit clause of the Constitution of the United States required Maryland to honor the New York judgment as conclusive evidence of a direct

civil liability from the individual defendant to the individual plaintiff for a certain sum, a debt of record. The current legal view agrees with the *Huntington* decision that statutes of the type there—and here—involved are primarily compensatory to creditors and not penal. See Leflar, *Conflict of Laws,* 186-87 (1959); Stumberg, *Conflict of Laws,* 373-74 (2nd ed. 1951); Leflar, *Extrastate Enforcement of Penal and Governmental Claims,* 46 Harv. L. Rev. 193 (1932).

In *Lambros v. Brown,* 184 Md. 350, 360, this Court quoted the definition of a penal law from *Huntington v. Attrill,* found it persuasive and said that "a statute may be penal in the broad sense and it may carry a penalty, and yet it may not be penal in the sense that it is unenforceable in other jurisdictions," and discussed *Price* and *Attrill* in a way that made it plain they were regarded as relics of a bygone day.

In *State, Use of Allen v. P. & C. R. R. Co.,* 45 Md. 41, *Ash v. B. & O. R. R. Co.,* 72 Md. 144, *Dronenburg v. Harris,* 108 Md. 597, *London Etc. Co. v. Steamship Co.,* 161 Md. 145, and *Davis v. Ruzicka,* 170 Md. 112, this Court refused to permit suits in Maryland on the death statutes of other states on the ground of dissimilarity of provisions and procedures. That these decisions are sound law today is extremely unlikely in view of subsequent holdings of the Supreme Court. In 1948 Congress amended the statute implementing the provisions of Art. IV, § 1, of the Constitution of the United States that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state," to provide for the first time that "the acts of the legislature of any state" shall have the same faith and credit in every court within the United States as they have by law or usage in the courts of the state from which they are taken, 28 U. S. C. § 1738. In 1951 the Supreme Court, in *Hughes v. Fetter,* 341 U. S. 609, 95 L. Ed. 1212, although stating in footnote 16 that it had found unnecessary in deciding the case to rely on the 1948 Judicial Code revision, held that Wisconsin must give the same full faith and credit to an Illinois death statute that it would have to give to an Illinois judgment on that statute. It was said that the forum state need not automatically subordinate a statutory policy to the conflicting *lex loci delicti* but rather that the Su-

preme Court would choose between competing public policies, and also that no state could escape its constitutional obligation of enforcing rights arising in another state by the simple expedient of removing jurisdiction from courts otherwise competent. The defendant and the plaintiff and his decedent were all residents of Wisconsin and the close relation of the litigants to that state made inapplicable the doctrine of forum non conveniens. See a discussion of the case and the matters involved in it in 100 U. Pa. L. Rev. 126 (1951). The Supreme Court reiterated and slightly extended its holding in *Hughes* that "public acts" includes legislative enactments in *First Nat. Bank v. United Air Lines,* 342 U. S. 396, 96 L. Ed. 441.

Recent legal thinking is that a public policy which will permit a state to refuse to enforce rights created by the law of a sister state must be very strong indeed. See Paulsen and Sovern, *"Public Policy" in the Conflict of Laws,* 56 Colum. L. Rev. 969, 1212-16 (1956); Katzenbach, *Conflicts on an Unruly Horse: Reciprocal Claims and Tolerances in Interstate and International Law,* 65 Yale L. J. 1087 (1956); Reese, *Full Faith and Credit to Statutes: The Defense of Public Policy,* 19 U. Chi. L. Rev. 339 (1952); Sumner, *The Status of Public Acts in Sister States,* 3 U. C. L. A. L. Rev. 1, 25 (1955); Carnahan, *What is Happening in the Conflict of Laws: Three Supreme Court Cases,* 6 Vand. L. Rev. 607; Restatement, Conflict of Laws § 612 (1934); *Broderick v. Rosner,* 294 U. S. 629, 79 L. Ed. 1100.

The Virginia statute specifies no special procedure or remedy, merely a method of service on a transitory cause of action for breach of contract or for tort, including the now familiar "long arm" process. The Supreme Court held in *Tenn. Coal Co. v. George,* 233 U. S. 354, 58 L. Ed. 997, that a provision in an Alabama statute that all suits by an employee to enforce liability of the employer must be brought in an Alabama court were not required to be given faith and credit in the forum of a sister state, but that the substantive provisions of the statute which created the liability should be.

If suit is again brought against them in Maryland, the appellees would seem to have a heavy burden in showing that the Virginia statute is penal or that there is a strong public policy

against its enforcement in Maryland or that there is any block to its enforcement here procedurally or by reason of the doctrine of forum non conveniens.

*Order affirmed, with costs.*