**Amanda B. PEDERSEN et al.,**
**Plaintiffs,**

v.

**Joseph M. BURTON, Clerk, Superior**
**Court of the District of Columbia,**
**Defendant.**

**Civ. A. No. 1877–71.**

United States District Court,
District of Columbia,
Civil Division.

Aug. 13, 1975.

Gerald P. Norton, Amanda B. Pedersen, Bergson, Borkland, Margolis & Adler, David A. Clarke, Donald R. Allen, Duncan, Allen & Mitchell, Washington, D. C., for plaintiffs and intervenor-plaintiffs; Ralph J. Temple, American Civil Liberties Union Fund, Washington, D. C., of counsel.

Thomas Nedrich, Asst. Corp. Counsel, Washington, D. C., for defendant.

ROBB, Circuit Judge, and BRYANT and PRATT, District Judges.

## MEMORANDUM AND ORDER

### PER CURIAM.

This case is a class action [1] brought by and on behalf of persons who have been and are being denied marriage licenses in the District of Columbia solely for refusing to disclose their "color" on their marriage license applications. Beginning on September 16, 1971, this court issued a series of temporary restraining orders,[2] ordering the defendant to process the marriage license applications of the plaintiffs and intervenor-plaintiffs.[3] The case is now before the three-judge court on the parties' cross-motions for summary judgment.

The case tests the constitutionality of two acts of Congress. The first, D.C. Code § 30–110 (1973), directs the clerk of the Superior Court of the District of Columbia to ascertain from marriage license applicants, under oath and upon penalty of perjury, the "names, ages, and color of the parties desiring to marry."[4]

1. This court never ruled on plaintiffs' unopposed Motion For Confirmation Of Action As A Class Action. The proposed class consists of all applicants for marriage licenses in the District of Columbia. We find that a class action is proper under Rule 23(b)(2). Accordingly, it is ordered that the plaintiffs' motion be, and hereby is, granted.

2. Since the complaint was filed, four persons have intervened as plaintiffs, endorsing the basic allegations of the complaint (Patrick

Mitchell, Ann Overton, Robert Abrams, and Marilyn Davis).

3. The fact that the named plaintiffs have gained the relief they seek does not make this case moot since plaintiffs have brought this suit as a class action. *Sosna v. Iowa*, 419 U.S. 393, 400, n. 11, 95 S.Ct. 553, 42 L.Ed. 2d 532 (1975).

4. Section 30–110 states in full:

It shall be the duty of the clerk of the Superior Court of the District of Columbia

The second, D.C.Code § 30–118 (1973), makes "all applications for marriage licenses," including the portion stating the color of the applicant, open to the public.[5] Plaintiffs challenge Section 30–110 to the extent that it requires applicants to disclose their color, and Section 30–118 to the extent that it opens this information relating to color to public inspection.

Congressional enactments effectively make the issuance of a marriage license indispensable for the lawful celebration of a marriage in the District of Columbia.[6] The information which Congress has required of license applicants is relatively scant. Aside from separate statements concerning blood tests[7] which are treated as confidential,[8] marriage applicants need only disclose whether they were previously married, their degree of relationship, their names, ages, and color. D.C.Code, § 30–110. The information about previous marriages and degree of relationship deters mar-

riages which are illegal due to bigamy, affinity, consanguinity.[9] The name requirement also serves this deterrent function and in addition provides a method of recording marriages, while the age information is necessary to enforce restrictions on marriage of infants in the District of Columbia.[10]

With respect to the "color" requirement, it may well be that the section's original purpose was to assist in the enforcement of laws proscribing interracial marriage which were apparently in effect in the District of Columbia until the Supreme Court's ruling in *Loving v. Virginia*,[11] declaring laws barring interracial marriage unconstitutional.[12]

The material facts relating to the Marriage License Bureau's interpretation and implementation of the color requirement are undisputed. The marriage license applicants must, in person, answer various questions on a preliminary application form.[13] One of the assistant clerks reviews this applica-

---

before issuing any license to solemnize a marriage to examine any applicant for said license under oath and to ascertain the names, ages, and color of the parties desiring to marry, and if they are under age the names of their parents or guardians, whether they were previously married, whether they are related or not, and if so, in what degree, which facts shall appear on the face of the application, of which the clerk shall provide a printed form, and any false swearing in regard to such matters shall be deemed perjury.

5. Section 30–118 states in full:
  All applications for marriage licenses shall be open to inspection as public records. All such applications upon which licenses have not yet been issued shall be kept together in a separate file readily accessible to public examination.

6. D.C.Code § 30–106 (1973) restricts the class of persons who may perform the marriage ceremony to judges, authorized court clerks, and ministers of the gospel authorized by a judge. To enforce the licensing procedure, D.C.Code § 30–108 (1973) imposes a penalty of up to $500 on authorized persons who celebrate the rites of marriage without first receiving a license issued from the clerk's office of the Superior Court.
  Although the District of Columbia does recognize common law marriage, *Hoage v.*

*Murch Bros. Constr. Co.*, 60 App.D.C. 218, 50 F.2d 983 (1931), this is obviously not a practical alternative.

7. D.C.Code § 30–119 (1973).

8. D.C.Code § 30–122 (1973).

9. D.C.Code §§ 30–101 and 30–103 (1973).

10. D.C.Code §§ 30–103, 30–104 and 30–110 (1973).

11. 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

12. Between 1801 and 1901 the terrtiory which currently comprises the District of Columbia followed Maryland law. See Ch. 15 § 1, 2 Stat. 103 (1801); Ch. 23, § 6, 2 Stat. 431 (1807); Ch. 180, § 1, 20 Stat. 102 (1878). During this period Maryland law banned interracial marriage. *Loving v. Virginia*, *supra*, 388 U.S. at 6 n. 5, 87 S.Ct. 1817; see Md.Acts of 1967, Ch. 6, § 31.

13. Nash Supp.Aff. ¶ 4(a); Aff.Ex.A.
  Although section 30–110 speaks only of the "color" of the parties, the current application forms, reflecting a recent change, ask for the "Color (Race)" of each party. The term "race" was added in 1971 "because a number of applicants, mostly foreigners or foreign nationals, were not sure how to respond to the question calling for color." Nash Supp. Aff. ¶ 7.

# 962

tion form and exercises his or her judgment as to whether the form has been adequately completed and whether there exists any legal impediment to the marriage.

Once he approves the preliminary application, the clerk then types the information on a formal license application or "docket sheet."[14] The preliminary application forms are kept on file by the Bureau for about three years. The formal docket sheets are kept on file permanently. Both types of records are freely open to public inspection by anyone for any purpose.[15]

Even though the Marriage License Bureau's procedures do not make the "color" of the parties relevant in determining whether there are legal impediments to a proposed marriage, the Bureau will not issue a marriage license unless the "color" of the parties appears "on the face of the application," as required by Section 30–110. On the average more than two applicants object to the "color" disclosure requirement every week.[16] Some applicants have flatly refused to state their "color" and have left without completing the application.[17] Others complete the question upon being told that the racial information is required by the D.C. Code.[18]

■ Plaintiffs allege, among other constitutional arguments, that the District of Columbia Code provisions create a classification which effectively denies them their constitutionally recognized right to marry, and thus deprives them of equal protection.[19] That D.C.Code Section 30–310 divides marriage applicants into two classes—and treats each class differently—is clear from the uncontested facts of this case. The law divides marriage license applicants into two categories, those who disclose their race and those who refuse to disclose, and thus allegedly discriminates against the latter to the extent of totally denying them the opportunity to be married in the District of Columbia.

In order to justify these statutes against the attack of denial of equal protection, it is necessary that defendants support this classification on the basis that it is required by a compelling government interest, or, at the very least, that there is a rational basis for this type of legislation. However, it is not necessary to formulate the precise standard for testing the city's interest in preserving the two statutes. This is because an evaluation of that alleged interest leads us to the conclusion that its sufficiency falls short of meeting any applicable standard. The defendant's case in this regard is palpably weak and clouded with ambiguity. Even before this suit was filed the chief law officer of the District of Columbia, in a lengthy discussion of the feasibility and desirability of eliminating the racial disclosure required by Section 30–110, stated that the racial information served no purpose in which the District of Columbia has an interest.[20] Then in

---

14. Nash Supp.Aff. ¶ 4(a)–(c); Aff.Ex.B.

15. Nash Supp.Aff. ¶ 5.
 "[I]nspections occur on a daily basis. A substantial portion of such inspection (sic) is done by representatives of various commercial enterprises which select names and addresses of applicants to whom to offer their products or services. . . . [C]ertain of these representatives . . . use the color (race) answer in selecting persons to whom they will offer their products or services." Nash Supp.Aff. ¶ 16.

16. Nash Supp.Aff. ¶ 8.

17. Nash Supp.Aff. ¶ 10; Ehrman Aff. ¶ 3.

18. Nash Supp.Aff. ¶ 11; Rosenbloom Aff.

19. Although the Bill of Rights contains no equal protection clause comparable to the Fourteenth Amendment, the Supreme Court has held that the due process clause of the Fifth Amendment grants the same protections from federal government action which the equal protection clause of the Fourteenth Amendment gives against state governmental action. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

20. Opinion Letter dated August 5, 1970 from the Corporation Counsel to the Chief Judge, District of Columbia Court of General Ses-

its initial response to the complaint in this case counsel for defendant disavowed any interest in preserving the statute.[21] However, for reasons not altogether clear, in subsequent pleadings and at oral argument defendant's counsel has pressed the point that the racial identity requirement should be upheld because it has great statistical importance. In support of its argument that Section 30–110 is not unconstitutional,[22] the District has submitted affidavits from statisticians which make conclusory statements that the city has need for this data, but the city has submitted no statements from its own city planners or other officials explaining precisely why this is so or what use the city makes of the data after it has been compiled.

Finally, any argument as to the existence of a governmental interest or rational basis which would justify this court in upholding Section 30–110 in our view has been put to rest by recent developments. On May 6, 1974, United States Senator Thomas Eagleton introduced S. 3476, a bill to amend D.C. Code § 30–110 by deleting the requirement that marriage license applications disclose the color of the applicant.[23] On May 30, 1974, Mayor-Commissioner Walter Washington wrote to Senator Eagleton:

> The District Government believes that this provision of law [the requirement that race be listed on the application] is outmoded and archaic and that the placement of racial designations on the marriage application does not appear to serve any useful purpose. While not clearly unconstitutional, the present statutory requirement is repugnant and is, in our view, unnecessary to the performance of the ministerial function of issuing a marriage license.

*Hearing before the Committee on the District of Columbia,* United States Senate, Ninety-Third Congress, Second Session on S. 3476, p. 18.

Shortly thereafter on June 5, 1974 Assistant Corporation Counsel William Robinson appeared as a witness before the Committee, endorsed Mayor Washington's letter, and stated "the District government strongly supports the enactment of S. 3476." Hearings, p. 105.

■ Accordingly, the court finds that the District of Columbia has shown no governmental interest in or rational basis for the requirement that marriage license applicants state their race on their marriage license application as required by D.C.Code § 30–110.[24]

For the foregoing reasons, the court concludes that Sections 30–110 and 30–118 are unconstitutional insofar as they require disclosure or recordation of the "color" of applicants for a marriage license, and that plaintiffs should be granted summary judgment enjoining defendants from further enforcement of those requirements.

It is so ordered.

BRYANT, J., concurs in the result.

sions, attached to plaintiffs' Motion for Temporary Restraining Order.

21. Defendant's Response to Plaintiffs' Motion for a Preliminary Injunction.

22. The city of Washington has not even suggested a hypothetical governmental interest in preserving Section 30–118, which requires the disclosure of the racial information collected under Section 30–110. In fact, the defendant admits that "it is entirely practical to make the racial designation item confidential."

Defendant's Memorandum of Points and Authorities in Support of Motion of Defendant for Summary Judgment and in Opposition to Motion of Plaintiffs for Preliminary Injunction, p. 10; see also Mindlin Aff. p. 16; Mindlin dep. p. 25; Woolsey dep. p. 29.

23. Although the Senate eventually enacted S. 3476, the House of Representatives did not act on the bill prior to the termination of the Second Session of the Ninety-Third Congress, and consequently the proposed bill never became law. See Report to the Court, filed May 23, 1975.

24. Our holding makes it unnecessary to pass on plaintiffs' argument that Section 30–118 is unconstitutional as applied. The elimination of the "color question" in Section 30–110 will obviously also eliminate the disclosure of information pursuant to Section 30–118.