505 A.2d 930

**Philip H. JACOBS**

v.

**John L. ADAMS.**

**Karen Randolph STEPHENSON**

v.

**Peter TSERONIS.**

**Ranzeno BARNES**

v.

**Robert CAUTHEN.**

**Nos. 1001, 1010 and 1032, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 13, 1986.

Steven Weinberg (Isicson, Steinmetz & Weinberg on brief), Washington, D.C., for appellant, Barnes.

Mary P. Nyiri (Louis Fireison and Louis Fireison & Associates, P.A., on brief), Bethesda, for appellant, Stephenson.

Thomas M. Barse and Heeney, Armstrong & Heeney, on brief), Rockville, for appellant, Jacobs.

John Marshall (Don F. Ryder, Jr. and Schroeder, Ryder, Braden, on brief), Rockville, for appellee, Jacobs.

Hugh E. Donovan (Donovan & Nash, on brief), Silver Spring, for appellee, Tseronis.

G. Clifton Patterson III, and McCarthy, Wilson & Ethridge, on brief, Rockville, for appellee, Cauthen.

Argued before BISHOP, BLOOM and KARWACKI, JJ.

BLOOM, Judge.

We have consolidated these three cases because they present almost identical scenarios and legal issues. Each case arose from a motor vehicle collision in the District of Columbia, and in each case the parties were residents of Maryland when suit was filed. In two of the cases, motions for summary judgment were granted; in the third case, the circuit court granted a motion to dismiss. The adjudication in each case was based upon a District of Columbia statute, referred to as the "No-Fault Insurance Law," which, in effect, prohibited the maintenance of a civil action based on liability against any person with respect to injuries arising from motor vehicle accidents in the District of Columbia unless, *inter alia*, medical expenses of a victim exceed $5000. The circuit court ruled in each case that the law of the District of Columbia applied, thus barring the action. The plaintiff in each case noted a timely appeal.

### *The Facts as Alleged and the Proceedings Below*

On November 10, 1983, appellant Karen Randolph Stephenson, driving her automobile on Harewood Road, N.E., Washington, D.C., brought it to a stop preparatory to making a left turn onto an intersecting street. Appellee Peter Tseronis drove his car into the rear of the Stephenson vehicle, allegedly injuring Stephenson's head, neck, and back. Asserting that Tseronis was negligent, she filed suit against him in the Circuit Court for Montgomery County, seeking damages for medical expenses, lost wages, and pain and suffering as well as damage to her automobile. Stephenson stated in her answers to interrogatories that her medical expenses amounted to $540. Tseronis filed a motion for summary judgment, which was granted. The court denied Stephenson's motion for reconsideration.

On November 11, 1983, on Waterside Drive in Washington, D.C., appellant Philip Jacobs was injured when his car was struck by a car driven by appellee John L. Adams. Jacobs sued Adams in the Circuit Court for Montgomery County. The parties agree that Jacobs's medical expenses were less than $5000. The court granted Adam's motion to dismiss. (Although Jacobs was a resident of the District of Columbia at the time of the accident, he had moved to Maryland before he filed suit.)

On December 5, 1983, in the District of Columbia, appellant Ranzeno Barnes was injured in a collision between his car and a vehicle driven by appellee Robert Cauthen. Barnes sued Cauthen in the District Court for Prince George's County. Cauthen filed a demand for a jury trial, and the case was removed to the Circuit Court for Prince George's County. Barnes sought compensatory damages of $10,000.00, including $385.00 for medical expenses and $153.21 for lost wages. Cauthen filed a motion for summary judgment which the court granted.

In each case, recovery was denied because of the District of Columbia no-fault insurance law which, with certain exceptions, barred civil actions based on liability arising from motor vehicle accidents occurring in the District of Columbia. The courts below concluded that the law of the District of Columbia should apply because the accident occurred there and because the law at issue is substantive in nature.

### The District of Columbia No-Fault Law

The no-fault law was designed to remedy a perceived deficiency in liability insurance coverage for motor vehicles and their operators in the District of Columbia. This was accomplished by making no-fault insurance compulsory and by limiting lawsuits stemming from accidents to certain requirements. The statute was codified as Chapter 21 of the District of Columbia Code, specifically, D.C. Code Ann. §§ 35–2101 through 2113 (Cum.Supp.1985). It applied to all

accidents occurring in the District of Columbia on or after October 1, 1983.

The purposes of the law were explained in § 35–2101, which stated that before the enactment of the new provisions persons injured in automobile accidents in the District of Columbia were unlikely to be compensated satisfactorily for their injuries because half of the victims did not qualify for benefits under existing policies, about 40 percent of the drivers in the District of Columbia did not have adequate insurance, and the average policy would pay only up to $10,000 per person per accident. Compulsory no-fault insurance was deemed to be the solution to these problems. The details of the required insurance were set forth in § 35–2103, which specified what insurance had to be carried by resident and nonresident drivers in the District of Columbia. Section 35–2104, entitled "Benefits under required insurance," generally provided that payments were to be made without regard to fault for all reasonable medical expenses, not to exceed $100,000, and for lost wages up to $2000 per month, not to exceed $24,000 and not payable after the death of the victim.

To encourage compliance with the statute, § 35–2105 prohibited civil litigation over any injury which would be compensable under the no-fault insurance protection described. It then listed six exceptions to this restriction, one of which, § 35–2105(b)(6), permitted a civil action for liability to be brought by one who sustained medical expenses in excess of $5000. This subsection is the focal point of these three appeals. Section 35–2105 read as follows:

(a) *Restriction.*—Except as provided in subsection (b) of this section, no person may maintain a civil action based on liability against any other person, with respect to an injury as to which personal injury protection benefits are payable under this chapter.

(b) *Exceptions to restriction.*—The provisions of subsection (a) of this section do not apply if:

(1) A person may be liable for damages for any medical and rehabilitation expenses of a victim and any work loss of a victim in excess of the personal injury protection benefits available therefor under this chapter;

(2) A person may be liable to the survivors of a victim for loss and noneconomic loss sustained as the result of death arising out of the maintenance or use of a motor vehicle and recoverable under applicable law;

(3) A person may be liable for any loss and noneconomic loss arising out of the maintenance or use of a motor vehicle with intent to injure himself or herself or any other person;

(4) A person may be liable for noneconomic loss, in accordance with otherwise applicable law, caused a victim and arising from the maintenance or use of a motor vehicle if the victim suffered an injury directly resulting in substantial permanent scarring or disfigurement; substantial and medically demonstrable permanent impairment which has significantly affected the ability of the victim to perform his or her professional activities or usual and customary daily activities; or a medically demonstrable impairment that prevents the victim from performing all or substantially all of the material acts and duties which constitute his or her usual and customary daily activities for more than 180 continuous days;

(5) A person may be liable for any loss or noneconomic loss, in accordance with otherwise applicable law, if, at the time of the accident, that person is an owner of a motor vehicle involved in that accident and required insurance was not in effect with respect to that motor vehicle:[1] or

---

1. Section 35–2103(b) provides that nonresidents of the District of Columbia who own motor vehicles may not operate or permit the operation of their vehicles in the District unless covered by insurance meeting the requirements of the no-fault statute. In none of these cases was any question raised as to whether the defendant/appellee, as a resident of Maryland, carried insurance that would provide the benefits specified in § 35–2104 of the District of Columbia Code. We

(6) A person may be liable for any noneconomic loss if medical expenses of a victim or his or her survivors exceeds $5000, inclusive of diagnostic x-ray costs. This amount shall be adjusted annually to reflect changes in cost of living index, pursuant to rules issued by the Superintendent.[2]

By contrast, Maryland's no-fault insurance scheme imposes no restrictions on the rights of people involved in an accident to pursue litigation. Md.Ann.Code art. 48A, § 542 (1979) provides: "Nothing in this subtitle [35. Motor Vehicle Casualty Insurance—Required Primary Coverage] shall be deemed to affect the right of any person to claim and sue for damages or losses sustained by him as the result of a motor vehicle accident."

## The Issues

These contrasting provisions have fueled much of the controversy in these cases. Each of the appellants contends that the court below erred in applying the law of the District of Columbia, advancing various arguments in support of that contention. They premise their first argument on the principle that the *lex loci delicti* applies only to the substantive law of the situs of the accident whereas the law of the forum governs with respect to procedural law. They then contend that the District of Columbia no-fault law barring actions for liability are procedural rather than substantive. Second, they argue that applying the District of Columbia no-fault law to these cases violates the public policy of Maryland. Appellants Jacobs and Stephenson also

---

are informed that policies of automobile liability insurance generally do provide coverage that would meet the requirements of other jurisdictions while the insured vehicles are being operated in those jurisdictions, but there is no requirement under Maryland law that they do so.

2. Effective February 19, 1986, the District of Columbia Code was amended to make the no-fault insurance provisions optional and to permit an injured party to elect whether to collect from his own insurer or to file a civil action against the other motorist.

contend that § 35–2105(b)(6) of the District of Columbia Code is unconstitutional. We shall address these issues *in seriatim.*

### Motion to Dismiss Jacobs v. Adams

■ Before we reach the substantive issues presented by these appeals, we must dispose of a motion to dismiss the Jacobs appeal. Adams moves to dismiss that appeal pursuant to Md. Rule 1035 b. 5. on the grounds that Jacobs's record extract does not comply with the requirements of Md. Rule 1028. Md. Rule 1035 b. reads: "On motion of any party, an appeal may be dismissed for any one of the following reasons * * * 5. The contents of the printed record extract do not comply with section b. of Rule 1028 (Printed Record Extract in Civil Cases)." Md. Rule 1038 b 1. provides as follows:

> The printed extract shall contain such parts of the record as may reasonably be necessary for the determination of the questions presented by the appeal, and shall include:
>
> (a) The judgment appealed from, together with the opinion or charge of the lower court, if any.
>
> (b) So much of the evidence, pleadings, or other parts of the record as is material to any question the determination of which depends upon the sufficiency of the evidence, pleadings or other matter contained in the record to sustain any action, ruling order or judgment of the lower court.

In lieu of a separate record extract, Jacobs attached an appendix to his brief, which is permissible. This appendix, however, only contained portions of the D.C. Code, the Maryland Code, the U.S. Constitution, and a copy of a memorandum decision of the District Court for the District of Columbia in an unrelated case. It did not contain a single portion of the record, nor did it contain either the judgment from which the appeal was taken or the pleadings upon which that judgment was based. Jacobs eventually filed a separate document captioned "Record Extract," but

he filed it well past the time within which briefs and extracts are due under Md. Rule 1030 and he did so without leave of court. We will not accept the belated record extract under those circumstances.

Adams's motion is granted, and the appeal is dismissed. *Spivey v. Harris,* 64 Md.App. 619, 498 A.2d 281 (1985); *Weston International Corporation v. Woodlawn Supermarkets, Incorporated,* 44 Md.App. 390, 408 A.2d 781 (1979); *Kemp-Pontiac-Cadillac, Incorporated v. S & M Construction Company, Incorporated,* 33 Md.App. 516, 365 A.2d 1021 (1976). If it gives Jacobs any solace, he would have been unsuccessful with respect to all of the issues he raised, as is evident from our disposition of the same issues raised by the other appellants.

## The Applicable Law

■ Maryland has received many invitations to retire the rule of *lex loci delicti* in favor of "more progressive" theories but has consistently declined them. The Court of Appeals carefully considered the problem in *White v. King,* 244 Md. 348, 223 A.2d 763 (1966), and made it clear that *lex loci delicti* is in full force in Maryland. In *White,* two Maryland residents were injured in Michigan when the driver of their car, also a Maryland resident, fell asleep at the wheel. When the injured parties sued the driver in a Maryland court, the driver contended that the Michigan guest statute prohibited any suit against him. The Court agreed with the driver and concluded that the passengers were barred from suit, even in Maryland. The Court said, "This Court has consistently followed the rule that when an accident occurs in another state substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place." *Id.* at 352, 223 A.2d 763.

The Court examined some of the concepts proposed to replace *lex loci delicti,* such as the "grouping of contracts," the "center of gravity," or the "best practical result" doctrine, including the argument that the *lex loci* rule is

illogical because where an accident occurs is just as fortuitous as the happening of the accident in the first place. *Id.* at 352–53, 223 A.2d 763. While it acknowledged the deficiencies of the old rule, the Court found that the benefits outweigh them, observing:

> In what we have said, we do not intend any implication that *lex loci delicti* is, in general, in our opinion, an unjust rule. Hardship may result in a particular case, but that, unfortunately, is true under any general legal principle. Certainty in the law is not so common that, where it exists, it is to be lightly discarded. We recognize the force of the countervailing arguments, but in the present state of the law, we leave any change in the established doctrine to the Legislature.

*Id.* at 355, 223 A.2d 763. The Court recently confirmed the continued vitality of this rule in *Hauch v. Connor*, wherein it said, "Since *White*, we have continued to adhere to the rule of *lex loci delicti.*" 295 Md. 120, 124, 453 A.2d 1207 (1983).

Under the doctrine of *lex loci delicti*, the law of the District of Columbia should apply to this case insofar as it governs the substantive rights of the parties. The question remains, however, as to whether the provisions of the D.C. no-fault insurance law, particularly those of § 35–2105, are substantive or procedural, since it is not disputed that the forum will always apply its own law to matters that are purely procedural. That rule is easier to state than to apply, for the classification of a law as procedural or substantive has been the rub in many conflicts cases. We have no doubt that the District of Columbia would consider its no-fault law to be substantive; the question now is whether Maryland should reach a contrary conclusion.

A logical resolution to this problem was suggested by Professors William Richman and William Reynolds, who said, "Forum interest and convenience ... should dictate the classification of an issue as 'procedural.' Put differently, if neither the forum's interest nor judicial convenience is

involved, no reason exists to treat the problem as 'procedural.' " W. Richman and W. Reynolds, *Understanding Conflict of Laws,* 116 (1984).[3] We agree. There is no reason to classify an issue as procedural, and hence controlled by the law of the forum, unless it affects the manner in which the forum administers justice. If the law of the state wherein an accident occurred does not grant the affected parties the right to bring a suit, then there is no need for the application of any procedural laws. It is only after the rights of parties have been established by the laws of the situs that the forum may determine how those rights shall be exercised. To categorize as procedural the law of another jurisdiction which created and defined the legal rights that accrued within its territory would render that law impotent. This we shall not do.

 It is not for us to allow a cause of action where none is permitted by the law of the situs. The District of Columbia, through the provisions of § 35–2105, had declared that no action existed under the facts of these cases. It did not restrict, limit, define, qualify, or otherwise simply modify the cause of action but declared it to be wholly unavailable. We therefore hold that the statute involved here was substantive law to be applied by the courts of this State.

Appellant Stephenson argues that even if the no-fault statute was substantive the conflict it presented was not one of tort law but of the law of contracts. In reaching this conclusion, she points out that the parties involved here were insured under Maryland insurance policies which apply regardless of where the accident occurred. As this particular question was not raised below or decided by the lower court, we may not consider it. Md. Rule 1085.

The appellants cite *Hauch v. Connor, supra,* in support of their arguments. We have no difficulty in distinguishing

---

3. Richman is a professor of law at the University of Toledo; Reynolds is a professor of law at the University of Maryland.

that case from cases before us because the Court of Appeals has already done so. In *Hauch,* passengers in an automobile sued the operator for negligence resulting in an accident that occurred in Delaware. All of the parties were employed by the same company and were on company business at the time of the accident. Maryland's workmen's compensation law permits an employee to sue a co-employee for negligence; Delaware's workmen's compensation laws bar such actions. The Court of Appeals pointed out that the conflict was not between Maryland and Delaware tort law, but between the workmen's compensation laws of the two states. Such conflicts, the Court held, present distinct policy questions and thus should not be treated as tort or contract matters for choice of law purposes. All of the parties were residents of Maryland, their normal place of employment was in Maryland and all of them made claim for and received benefits under the Maryland Workmen's Compensation Act. Accordingly, the Court concluded that Maryland's workmen's compensation laws should determine the threshold question of the right to bring suit in a Maryland court. 295 Md. at 125–34, 453 A.2d 1207. *Hauch* is clearly inapposite to the cases now before us.

## *Public Policy*

■ Stephenson and Barnes argue that application of the District of Columbia no-fault scheme to these cases violates the public policy of Maryland. Appellants rely on Md.Ann. Code art. 48A, § 542 (1979), which reads: "Nothing in this subtitle shall be deemed to affect the right of any person to claim and sue for damages or losses sustained by him as the result of a motor vehicle accident." This section, they argue, is a codification of Maryland's public policy, which is to permit an injured party to pursue any remedy available at law. The District of Columbia would prohibit that which Maryland would allow and thus, appellants conclude, that law must be set aside in the face of Maryland's overriding public policy.

We must caution that "public policy" is not a term to be bandied about lightly in every conflict of laws case. One should be well convinced of the weight of a supposed policy before advancing it against bedrock legal principles. The Court of Appeals has made it clear that for the argument of "public policy" to succeed the alleged public policy must be a very strong one. In *Texaco, Incorporated v. Vanden Bosche*, 242 Md. 334, 340, 219 A.2d 80 (1966), the Court said, "Recent legal thinking is that a public policy which will permit a state to refuse to enforce rights created by the law of a sister state must be very strong indeed." This sentiment was reiterated in *The Harford Mutual Insurance Company v. Bruchey*, 248 Md. 669, 238 A.2d 115 (1968). There, a Virginia law not only prevented a husband from recovering for loss of consortium but even prohibited him from filing suit therefor. The Court was not persuaded to apply Maryland law, which would allow recovery, on the basis of public policy, saying:

[T]here remains only the question of whether there is extant in Maryland such a strong public policy in favor of recovery by a husband for loss of consortium as to require its courts to refuse to apply the law of a sister State which does not recognize such a right. We find no such strong public policy. In [*Texaco, supra* ], we point out that there is heavy burden on him who urges rejection of foreign law on ground of public policy....

*Id.* at 674, 238 A.2d 115.

The trial court in *Bruchey* had applied the law of Maryland, saying:

The distribution and administration of monetary recovery between a husband and wife, when interdependent with the subsequent conjugal rights and duties seem to be policies which should be governed by the law of the marital domicile. This belief is reinforced by the fact that all the parties are domiciled in Maryland, and that the accident occurred on a temporary excursion into Virginia.

* * *

Therefore, the issue posed in this case seems to go beyond the public policy of compensating tort victims, for the interdependency of Maryland's conjugal rights and duties indicates a public policy in favor of continuing this State's marital relationship in a way that has been rejected by the Virginia Legislature for its domiciliaries.

*Id.* at 672–73, 238 A.2d 115. The Court of Appeals disagreed and held that this was not a sufficiently strong "public policy" to warrant ignoring the rule of *lex loci delicti.* The public policy urged upon us today is certainly no greater than that initially found by the trial court in *Bruchey* and is likewise an insufficient basis for ignoring the rule of *lex loci delicti.*

The District of Columbia has elected to close the doors of its courts to automobile negligence cases it perceives as trivial enough to be covered solely by no-fault insurance. If Maryland were to entertain these suits, our courts might well become small claims courts for the District of Columbia, flooded with suits barred by the laws of that neighboring jurisdiction. If there is any strong public policy in these cases, it is to avoid such a result.

We note finally that Stephenson has relied on *Davis v. Ruzicka,* 170 Md. 112, 183 A. 569 (1936), for the proposition that Maryland will apply the law of another state only when that law is similar in design and purpose to the law of Maryland. *Davis* was discredited twenty years ago in *Texaco v. Vanden Bosche, supra,* wherein the Court said, "That th[is] decision[ ] [is] sound law today is extremely unlikely in view of subsequent holdings of the Supreme Court." 242 Md. at 339, 219 A.2d 80. In the face of that pronouncement, we are not disposed to revive *Davis* at this time.

### Constitutional Issues

Stephenson challenges § 35–2105 on the basis that it violates the equal protection guarantees of the United

States Constitution and the right to a jury trial guaranteed by the Maryland Constitution.

She first contends that the statute was held unconstitutional by the United States District Court for the District of Columbia in *Dimond v. District of Columbia,* 618 F.Supp. 519 (1984). The court there found that the statute violated equal protection as applied to the federal government through the due process clause of the Fifth Amendment. Stephenson argues that as the law was struck down we must disregard it as well. *Dimond,* however, is not binding on us, and we are free to evaluate the statute on our own. As we said in *Cates v. State,* 21 Md.App. 363, 372, 320 A.2d 75, *cert. denied,* 272 Md. 739 (1974), "The rulings of courts of other states are classified not as binding, but as persuasive authority. If the reasoning which supports them fails to persuade, they are no authority at all." We find *Dimond* utterly unpersuasive, and we shall not adhere to it.

First, we are not wholly convinced that this case even presents an equal protection issue. Any "classification" of persons could only be by the amount of medical expenses they quite fortuitously incur in an automobile accident. The statute essentially treats all persons the same in requiring no-fault insurance. The issue is debatable, of course, and fortunately we need not resolve the appeal around it for we do not find that the statute violates equal protection in any case.

The equal protection guarantees of the United States Constitution are not violated by mere classification or discrimination; equal protection prohibits only invidious discrimination. *Clements v. Fashing,* 457 U.S. 957, 962–63, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404 (1982); *Williamson v. Lee Optical of Oklahoma, Incorporated,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, *reh'g denied,* 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256 (1955). For the purpose of equal protection review, classifications involving inherently suspect classes such as race, nationality, alienage, or funda-

mental rights are subject to the strictest scrutiny. To withstand a constitutional challenge, such classifications must be necessary to promote a compelling state interest. *Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984); *Massage Parlors, Inc. v. Mayor and City Council of Baltimore*, 284 Md. 490, 398 A.2d 52 (1979). As to fundamental rights, *see also Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (right to privacy); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1969) (right to interstate travel); *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (First Amendment rights); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right to procreate). As to suspect classes, *see also Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alien status); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); *Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (national origin). When the challenged classification involves neither suspect criteria nor fundamental rights, it is examined under a less rigorous standard which requires only that the classification rationally or reasonably further a legitimate governmental purpose, objective, or interest. *Exxon Corporation v. Eagerton*, 462 U.S. 176, 195–96, 103 S.Ct. 2296, 2307–08, 76 L.Ed.2d 497, *appeal dismissed*, 464 U.S. 801, 104 S.Ct. 45, 78 L.Ed.2d 67 (1983); *Clements*, 457 U.S. at 962–63, 102 S.Ct. at 2843.

A classification is valid and will be upheld under this "rational relation" test if it is rationally related to a legitimate governmental interest. *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 547–48, 103 S.Ct. 1997, 2001–02, 76 L.Ed.2d 129 (1983). Conversely, the challenged classification will be invalidated only if it is arbitrary or bears no rational relationship to a legitimate state purpose, *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation*, 439 U.S. 463, 501–02, 99 S.Ct. 740, 761–62, 58 L.Ed.2d 740, *reh'g denied*, 440 U.S. 940, 99 S.Ct. 1290, 59 L.Ed.2d 500 (1979), or if the classification

rests on grounds that are wholly irrelevant to the achievement of the government's objectives and if no set of facts can reasonably be conceived to justify it. *Clements*, 457 U.S. at 962–63, 102 S.Ct. at 2843.

Since the statute in question was passed into law by the Congress of the United States, the equal protection analysis stems from the due process clause of the Fifth Amendment rather than the equal protection clause of the Fourteenth Amendment. The analysis and the result, however, are the same.

> Although the Bill of Rights contains no equal protection clause comparable to the Fourteenth Amendment, the Supreme Court has held that the due process clause of the Fifth Amendment grants the same protections from federal government action which the equal protection clause of the Fourteenth Amendment gives against state governmental action. *Bolling v. Sharpe*, 347 U.S. 497 [74 S.Ct. 693, 98 L.Ed. 884] (1954).

*Pedersen v. Burton*, 400 F.Supp. 960, 962, n. 19 (D.C.D.C. 1975).

The statute in question involved neither suspect classifications nor fundamental rights. The stated purpose of the statute was to "provide adequate protection for victims who are injured in the District or who are injured while riding in motor vehicles registered or operated in the District." D.C. Code Ann. § 35–2102 (Cum.Supp.1985). To encourage D.C. residents to comply with the statute, the law dictated that in cases that do not involve disabling injuries, unless medical expenses exceed $5000, recovery could only be had through the required no-fault insurance coverage. The law was designed to provide better insurance protection for the residents of the District of Columbia. The D.C. Council may also have believed it was conserving judicial resources by barring suits it felt were not significant enough to warrant the use of court time and personnel. Both of these ends—ensuring that residents would be compensated for injuries and conserving judicial resources—are legitimate

governmental interests. The so-called "classification" of residents by the amount of medical expenses was rationally related to accomplishing these purposes.

 Finally, Stephenson argues that § 35–2105 violates Article 23 of the Maryland Declaration of Rights, which reads: "The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved." Stephenson contends that the "$5000 threshold requirement of the D.C. no-fault law effectively bars appellant's right to a trial by jury that is guaranteed by the Maryland Constitution." This right, she argues, is specifically preserved in the Maryland no-fault law, which does not prohibit any civil action arising from an automobile accident in this State. While we must credit Stephenson's counsel for their ingenuity, we find this argument to be utterly without merit.

The District of Columbia law did not bar the right to a jury trial; it provided that unless certain criteria were met there was no cause of action for which a trial of any sort could be had. Unless one either sustained disabling injuries or incurred medical expenses exceeding $5000, one could not pursue any action in court. If there is no cause of action, there is nothing to which the right of trial by jury can attach. The District of Columbia law, therefore, does not offend the Maryland Declaration of Rights.

In summary we find no error in the judgments rendered below in the appeals brought by Mr. Barnes and Ms. Stephenson; we therefore affirm them.

APPEAL NO. 1001 DISMISSED. COSTS TO BE PAID BY APPELLANT.

JUDGMENT IN APPEAL NO. 1010 AFFIRMED. COSTS TO BE PAID BY APPELLANT.

JUDGMENT IN APPEAL NO. 1032 AFFIRMED. COSTS TO BE PAID BY APPELLANT.