**D & G FLOORING, LLC Plaintiff**

v.

**HOME DEPOT U.S.A., INC. Defendant**

**No. CIV. JFM–04–2954.**

United States District Court,
D. Maryland.

Dec. 8, 2004.

Mark Christian Franceschini, Mark C. Franceschini PA, Owings Mills, MD, for Plaintiff.

George F. Ritchie, IV, Christopher S. Gunderson, Michelle Jeanine Dickinson, Piper Rudnick LLP, Baltimore, MD, for Defendant.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff D & G Flooring, LLC ("D & G") brought this action against Defendant Home Depot U.S.A., Inc. ("Home Depot") in Baltimore County Circuit Court seeking recovery on theories of breach of contract (count one), fraud (count two), negligent misrepresentation (count three), violation of the Maryland Consumer Protection Act (count four), promissory estoppel (count five), and defamation (count six). Home Depot removed the action to this court. Home Depot's motion to dismiss all counts is presently pending. For the reasons stated below, Home Depot's motion to dismiss will be granted.

## I. FACTS

D & G is a Maryland company in the flooring installation business. Home Depot is a Georgia corporation authorized to do business in Maryland as a foreign corporation. On August 4, 1997, D & G and Home Depot entered into an agreement ("1997 Installer Agreement") regarding flooring installation that explicitly stated that D & G was not to be the exclusive installer of carpet sold at Home Depot stores in the Baltimore market and that no amount of business was guaranteed by the Agreement. The 1997 Installer Agreement also provided that it could be terminated by either party at any time.

D & G alleges that, in the spring of 2002, Home Depot approached D & G and proposed that D & G become the exclusive

installer of carpet sold in Home Depot stores in the Baltimore area. Because being the exclusive installer would require a significant expansion of D & G's business, Home Depot demanded that D & G expand its facilities, hire new staff, and purchase new equipment. D & G alleges that this expansion would not have occurred but for Home Depot's request. D & G alleges that the parties negotiated a new contract that was memorialized by a writing executed on July 22, 2002 ("2002 Installation Schedule"). The 2002 Installation Schedule expressly incorporates the 1997 Installer Agreement and does not include an expression of an exclusivity agreement. In September 2003, and for reasons not reflected in the record, Home Depot withdrew all of its business from D & G.

## II. ANALYSIS

### A. Breach of contract

D & G argues that the July 2002 Installation Schedule memorializes an oral exclusivity agreement between Home Depot and D & G and that it "supersedes and renders unenforceable" the 1997 Installer Agreement. The plain language of the 2002 Installation Schedule contradicts this assertion, stating "[t]his Schedule incorporates and is subject to all terms and provisions of the Installer Agreement ...." Where a writing refers to another document, that other document becomes constructively part of the writing and the two form a single instrument. *E.g., Consoli-* *dated Freightways Corp. v. Synchroflo, Inc.,* 164 Ga.App. 275, 277, 294 S.E.2d 643, 645 (1982).[1] Therefore, the 1997 Installer Agreement, as incorporated into the 2002 Installation Schedule, governed the relationship between the parties up to and through July 2002. The 1997 Installer Agreement specifically states that D & G is *not* the exclusive installer for Home Depot in the defined market. The 2002 Installation Schedule contains no exclusivity provision to contradict the earlier writing. Therefore, the plain language of the instrument that D & G relies upon to support its claims of exclusivity explicitly rejects such an agreement.

Alternatively, D & G argues that the parties' course of conduct or some agreement outside the four corners of the written agreement supports their rights as the exclusive installer of carpet sold at Home Depot. This argument also fails. Under Georgia law, when a party agrees to a contract containing a merger clause, any other alleged understanding, representation, or promise not embodied in the writing is unenforceable and void. Ga. Code Ann. § 13–2–2(1); *see also Cook v. Reg'l. Communications, Inc.,* 244 Ga.App. 869, 870, 539 S.E.2d 171, 173 (2000) (when a contract contains a merger clause, evidence of other alleged promises are inadmissible to vary, add to, or take away from the written terms of the contract).

Paragraph 14.5 of the 1997 Installer Agreement[2], as incorporated into the 2002

1. The 1997 Installer Agreement provides that the contract is to be construed under the law of Georgia. Maryland courts recognize the validity of choice of law provisions. *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.,* 336 Md. 606, 610, 650 A.2d 246, 248 (1994). Because it appears that the 1997 Installer Agreement is the governing contract, Georgia's law will be applied.

2. "This Agreement, together with the Exhibits and attachments hereto, if any, and The Home Depot's then current Purchase Order, Installation Contracts and procedures constitute the entire Agreement between the parties. Any prior agreements, promises, negotiations, or representations that may have been made or relied upon which are not expressly set forth in these documents are of no force or effect. This Agreement may only be amended

Installation Schedule, is a merger clause. D & G's pleadings assert that the 2002 Installation Schedule memorialized the alleged oral exclusivity agreement. Because this alleged agreement must have been made prior to the execution of the 2002 Installation Schedule, it is subject to the merger clause. Therefore, the alleged oral agreement is unenforceable as void. Both because the relationship between the parties is governed by the 1997 Installer Agreement that specifically rejects exclusivity and because any oral agreement is subject to the merger clause in that instrument, count one alleging breach of contract will be dismissed.

### B. *Fraud* [3]

■ Count two must fail because D & G fails to allege fraud with particularity. *See* Fed.R.Civ.P. 9(b). When asserting fraud in a federal court, a plaintiff must provide "details of the time, place, and contents of the false representation, as well as the identity of the person making the representation." *Heritage Oldsmobile–Imports v. Volkswagen of Amer.,* 264 F.Supp.2d 282, 291 (D.Md.2003). D & G's Complaint fails to allege the identity of the person making the representations in question or details of the time or place of those representations. The Affidavit of Gene Robinson, attached as Exhibit One to D & G's Opposition, provides more details of the alleged fraud. However, Robinson's account differs in some obvious ways from the allegations in the Complaint. For example, the Affidavit states that on or about July 22, 2002, Ed Camp, a representative of Home Depot, advised D & G that it would be the exclusive installer for eighteen stores in the Baltimore area. In contrast, the Complaint claims that Home Depot did not approach D & G about making it the exclusive installer for eighteen stores until 2003.

■ One purpose of the particularity requirement in Rule 9(b) is to permit defendants to prepare a defense to the specific allegations of fraud. *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999). The meager allegations of fraud in the Complaint, coupled with the confusion created by the inconsistent presentation of the facts, impair Home Depot's ability to present a defense. Therefore, count two will be dismissed; however, D & G will be given leave to amend the Complaint to attempt to allege the fraudulent conduct with sufficient particularity and factual consistency.

### C. *Negligent Misrepresentation*

■ Count three alleges that Home Depot negligently represented that it was committed to providing D & G with exclusive installation rights for eighteen stores when it knew that these representations were false. These are representations regarding Home Depot's future conduct, i.e., promises; promises are not actionable under a theory of negligent misrepresentation. *Heritage,* 264 F.Supp.2d at 291. Therefore, count three will be dismissed.

### D. *Maryland Consumer Protection Act*

■ The Maryland Consumer Protection Act ("CPA"), Md. Comm. Law Code

---

or modified by a writing signed by an authorized representative of The Home Depot and by [D & G]."

**3.** Home Depot's pleadings suggest that Georgia law applies to D & G's tort claims. This is incorrect. Under Maryland choice of law rules, the law of the place where the alleged injury occurred applies. *Nat'l Coach Works of Virginia v. Detroit Diesel,* 128 F.Supp.2d 821, 829–30 (D.Md.2001) (citing *Jacobs v. Adams,* 66 Md.App. 779, 505 A.2d 930 (1986)). In this case, the alleged harm was suffered in Maryland. Thus, Maryland law will be applied to the tort claims.

Ann., § 13–101, *et seq.,* provides public and private causes of action for "consumers" against persons and corporations that engage in "unfair or deceptive trade practices in the provision of any consumer good or service in which the State of Maryland has an interest." "Consumer," is defined as "an actual or prospective purchaser ... of consumer goods, consumer services; consumer reality, or consumer credit." *Id.* § 13–101(c)(1). "Consumer goods" are those which "are primarily for personal, household, family, or agricultural purposes." *Id.* § 13–101(d). The Maryland Court of Appeals has clarified the statutory definitions, holding that the CPA applies only where the purchaser intends to use the goods for "personal, household, family, or agricultural purposes." *See Morris v. Osmose Wood Preserving,* 340 Md. 519, 540–41, 667 A.2d 624, 635 (1995). Here, it is undisputed that, although homeowners purchased the goods in question for their purposes, D & G itself did not do so. Therefore, D & G lacks standing to bring an action under the CPA, and Home Depot's motion to dismiss count four will be granted.

### E. *Promissory Estoppel*

To state a claim for promissory estoppel, a party must show a promise which the promisor should reasonably expect to induce action or forbearance on the part of a promisee or a third person and which does induce reasonable action or forbearance. *See G & M Oil Co. v. Glenfed Fin. Corp.,* 782 F.Supp. 1085, 1090 (D.Md.1991); *Maryland Nat'l Bank v. United Jewish Appeal Fed'n, Inc.,* 286 Md. 274, 281–82, 407 A.2d 1130, 1134 (1979); *see also* Restatement (Second) of Contracts § 90. Such a promise is binding if injustice can be avoided only by enforcement of the promise. *G & M Oil Co.,* 782 F.Supp. at 1090 (citations omitted).

D & G claims that it relied on Home Depot's oral promise to make D & G Home Depot's exclusive installer in the Baltimore market. As evidence of their reliance on this promise, D & G avers that it (1) developed a business plan that contemplated the Home Depot business; (2) incurred expenses from the purchasing of carpet; (3) entered into a lease on a larger warehouse; (4) hired additional employees; (5) purchased a carpet cutting machine; (6) purchased a copier; and (7) purchased a telephone system. (Compl.¶¶.11, 15–17). D & G alleges that but for Home Depot's promise of exclusivity, it would not have made these upgrades.

While D & G has alleged a promise and reliance on that promise, there is an important question whether that reliance was reasonable. In *RCM Supply Co., Inc. v. Hunter Douglas, Inc.,* 686 F.2d 1074, 1075 (4th Cir.1982), an aluminum siding distributor claimed that it received an oral promise from a producer to provide siding at the producer's lowest price discount and to provide financing for the purchase of the siding. The business relationship soon soured and the distributor alleged that the producer breached the promise to provide it with the lowest prices and financing. *Id.* at 1075–76. Finding that the distributor's reliance on the oral promise was unreasonable as a matter of law, the Fourth Circuit reversed the trial court's grant of recovery based on promissory estoppel. *Id.* at 1078. In *RCM Supply* the court found that reliance on an oral promise absent any writing was unreasonable as a matter of law where the parties involved were sophisticated businesses. Other courts applying Maryland law have reached the same conclusion. *E.g., G & M Oil Co.,* 782 F.Supp. at 1091 (recognizing that "sophisticated business entities do not enter into multimillion dollar transactions without a comprehensive writing"); *Union Trust Co. v. Charter*

*Med. Corp.*, 663 F.Supp. 175, 179 (D.Md. 1986).

■ In comparison to *RCM Supply,* D & G's alleged reliance is even more unreasonable; not only is the alleged oral promise unsupported by a writing, it directly contradicts the terms of a writing executed the same day as the promise was allegedly made. It is unfathomable that a business entity with millions of dollars in annual revenues would not require that a fundamental change in one of its most profitable business relationships be expressed in a writing. This is particularly true where the business has knowledge that the conditions of its new relationship directly conflict with the terms of its prior relationship. D & G's reliance on the alleged oral promise was objectively unreasonable and count five will be dismissed.

### F. Defamation

■ In Maryland, to state a claim for defamation, a plaintiff must show (1) that the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. *Samuels v. Tschechtelin,* 135 Md.App. 483, 544, 763 A.2d 209, 242 (2000). A defamatory statement is one that "tends to ... discourag[e] others in the community from having a good opinion of, or associating or dealing with" a person. *Id.* at 543–44, 763 A.2d at 241–42 (citations omitted). Fault can be based on negligence or actual malice. *Id.* at 544, 763 A.2d at 242. Actual malice can be established by a clear and convincing showing that a defendant published a statement with actual knowledge of its falsity. *Id.*

Though neither "vagueness" nor "lack of detail" are sufficient grounds on which to grant a motion to dismiss, *Kress v. Food Employers Labor Relations Ass'n,* 217 F.Supp.2d 682, 685 (D.Md.2002) (citations omitted), a court deciding such a motion need not accept factual allegations devoid of any reference to actual events. *Gray v. Metts,* 203 F.Supp.2d 426, 428 (D.Md.2002) (citing *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979)); *see generally* Wright & Miller, Federal Practice & Procedure § 1357, at 521–44 ("Although the pleading requirements of Rule 8(a) are very liberal and easily satisfied, many federal courts have made it clear that more detail often is required than the bald statement by the plaintiff that she has a valid claim of some legally recognizable type against the defendant."). Indeed, where allegations are "so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, [the allegations] are meaningless as a practical matter and, as a matter of law, insufficient to state a claim." *Stordeur v. Computer Assocs. Int'l, Inc.,* 995 F.Supp. 94, 98 (E.D.N.Y.1998) (citing *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987)); *see also MedImmune, Inc. v. Centocor, Inc.,* 271 F.Supp.2d 762, 771 (D.Md.2003).

■ D & G alleges that Home Depot falsely communicated to other businesses that D & G was engaged in inappropriate, unethical and/or incompetent business practices and that these communications injured D & G's reputation. D & G also alleges that Home Depot knew that these statements were false. However, the Complaint does not allege the party to whom Home Depot made defamatory statements, when the statements were made, or the content of those statements. Similarly, the Complaint does not describe the nature of the damages that resulted from the statements. On the whole, D & G's allegations in support of this claim are strikingly sparse. As a matter of law, the allegations are insufficient to state a claim.

Home Depot's motion to dismiss count six will be granted, with leave to amend.

For the reasons stated above, Home Depot's motion to dismiss is granted. A separate order follows.

ORDER

For the reasons stated in the accompanying memorandum, it is, this 8th day of December 2004

ORDERED

1. Defendant's motion to dismiss is granted;

2. Counts I, III, IV, and V are dismissed with prejudice; and

3. Counts II and VI are dismissed with leave to amend on or before December 23, 2004.