792 F.2d 179
 253 U.S.App.D.C. 111, 54 USLW 2619
 Eileen DIMOND, et al.
v.
DISTRICT OF COLUMBIA, et al., Appellants.
Eileen DIMOND, et al.
v.
DISTRICT OF COLUMBIA, et al. State Farm Mutual Automobile
Insurance Company, et al., Appellants.
Eileen DIMOND, et al., Appellants
v.
DISTRICT OF COLUMBIA, et al.
 Nos. 85-5119 to 85-5121.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 14, 1986.
Decided May 30, 1986.
 
 Jacob Stein and Frederic W. Schwartz, Jr., with whom Curtis E. von Kann, Washington, D.C., were on the brief for Dimond, et al., appellants in No. 85-5121 and appellees in Nos. 85-5119 and 85-5120.
 Lutz Alexander Prager, Asst. Corp. Counsel, with whom John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for District of Columbia, et al., appellees in No. 85-5121 and cross-appellants in No. 85-5119.
 Lawrence H. Mirel, with whom C. William Tayler, Washington, D.C., was on the brief for State Farm Mut. Auto. Ins. Co., et al., cross-appellants in No. 85-5120 and amicus curiae in Nos. 85-5119 and 85-5121.
 John F. Lillard, III, Washington, D.C., was on the brief for amicus curiae, John Doe, in Nos. 85-5119 and 85-5121 urging affirmance.
 C. Francis Murphy and Louis P. Robbins, Washington, D.C., were on the brief for amicus curiae, Government Employees Ins. Co., et al., in No. 85-5119 urging reversal.
 Before WALD, STARR and SILBERMAN, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 This appeal emanates from a series of constitutional challenges brought by plaintiffs Eileen Dimond, Lisa van Susteren, Henry T. Brent and Thomas Harley to the District of Columbia Compulsory/No-Fault Motor Vehicle Insurance Act of 1982. See D.C. Code Ann. Secs. 35-2101 to 35-2113 (1985 Supp.). The District Court granted summary judgment for the District of Columbia on most of these challenges but sustained plaintiff Harley's challenge to a provision which restricts an automobile accident victim's right to bring a tort suit to recover noneconomic losses such as pain and suffering unless the victim incurs $5,000 or more in medical expenses. The District Court ruled that this limitation violated the equal protection principles of the Fifth Amendment. The Court also ruled that the plaintiffs lacked standing to assert that the City Council's failure to read the proposed No-Fault bill twice in substantially the same form prior to passage as required by the charter of the District of Columbia rendered the Act null and void. Both sides appealed portions of the District Court's judgment. Prior to oral argument in this court, the District of Columbia City Council substantially amended the 1982 No-Fault Insurance Act, effective March 4, 1986. Counsel for the plaintiffs informed this court that the only claims they would continue to press on appeal after the amended No-Fault Insurance Act went into effect would be those related to Harley's challenge to the $5,000 medical expenses threshold.[1] Accordingly, only the District of Columbia's appeal from the District Court's ruling that this threshold violated equal protection principles and Harley's appeal from the Court's ruling that he lacked standing to assert that the City Council failed to observe its required procedures in enacting the 1982 No-Fault Insurance Act remain for disposition. For the reasons that follow, we reverse the District Court's ruling that the $5,000 medical expenses threshold violated the Constitution but affirm its disposition of Harley's other challenges to the 1982 No-Fault Insurance Act.
 
 
 2
 In a related appeal, State Farm Mutual Automobile Insurance Company, Travelers Indemnity Company and the American Insurance Association (collectively referred to in this opinion as State Farm) contest the District Court's denial of their motion to intervene as of right in the underlying challenge to the No-Fault Insurance Act brought by Harley and the other plaintiffs. Because we find that State Farm made a legally sufficient showing that the District of Columbia might not adequately represent State Farm's interests, we also reverse this ruling of the District Court.
 
 I. BACKGROUND
 A. The 1982 No-Fault Insurance Act
 
 3
 The 1982 No-Fault Insurance Act established a compulsory insurance system for personal injury in which victims of automobile accidents would be compensated irrespective of fault. In general, this system provided that accident victims would be paid by their own insurers rather than recovering from the insurance company of the person "at fault" for an accident. The 1982 Act required every owner of a motor vehicle registered or operated in the District of Columbia to carry insurance covering, among other things, the payment of "personal injury protection" benefits. Personal injury protection benefits provided compensation for medical and rehabilitation expenses, loss of income, and funeral costs incurred by any policy-holder, passenger, pedestrian or other uninsured person injured in an automobile accident. See D.C. Code Ann. Secs. 35-2103(a)-(b), 35-2104 (1985 Supp.). These benefits were required to be "provided without regard to, and irrespective of, negligence, freedom from negligence, fault, or freedom from fault on the part of any person." D.C. Code Ann. Sec. 35-2104(b) (1985 Supp.).
 
 
 4
 Two related features of this no-fault personal injury protection scheme are important for purposes of this appeal. First, under the 1982 Act, no-fault personal injury protection benefits compensated a victim only for economic detriment incurred as a result of an accident. Noneconomic loss, defined by the statute as "pain, suffering, inconvenience, physical or mental impairment, and other nonpecuniary damage," could be recovered only "under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle." See D.C. Code Ann. Sec. 35-2102(19) (1985 Supp.). In other words, an accident victim's own insurance company would not compensate the victim for noneconomic loss. The victim could recover for such loss only by bringing a tort suit and proving that another individual was responsible for the accident.
 
 
 5
 Although noneconomic loss could be recovered only by bringing a tort suit against the driver "at fault" in an accident, the 1982 Act restricted victims' ability to bring such actions. Under section 6 of the 1982 No-Fault Insurance Act, no accident victim could bring a tort action "with respect to an injury as to which personal injury protection benefits are payable" unless the victim fell within one or more of six enumerated exceptions to this ban, five of which involved tort suits to recover noneconomic losses. See D.C. Code Ann. Sec. 35-2105 (1985 Supp.).[2] Specifically, a victim (or his survivors) could maintain a tort action to recover noneconomic losses if (1) the victim died as a result of the accident; (2) the victim was injured intentionally by a driver; (3) the victim suffered substantial permanent scarring or disfigurement, or significant permanent or temporary impairment for more than 180 continuous days; (4) the victim was injured by a person who failed to carry the statutorily required insurance; or finally, (5) the victim incurred medical expenses, including diagnostic x-ray costs, exceeding $5,000.
 
 B. The District Court's Decision
 
 6
 Plaintiff Thomas Harley and three other plaintiffs challenged the legality of the 1982 No-Fault Insurance Act in District Court.[3] The District Court first found that Harley had standing to challenge section 6(b) of the 1982 No-Fault Insurance Act. According to his unchallenged affidavit, Harley sustained physical injuries in an auto accident in the District of Columbia. Although Harley suffered "a lot of pain," he did not meet any of the threshold prerequisites set forth in section 6(b) of the Act and consequently could not maintain a tort suit to recover his noneconomic losses. As the District Court concluded, "Harley's apparent inability to sue constitutes injury in fact, is traceable to Sections 6(a) and 6(b)(6) of the Insurance Act, and is likely to be redressed by a favorable decision." Dimond v. District of Columbia, 618 F.Supp. 519, 523 (D.D.C.1984).
 
 
 7
 Harley challenged the 1982 No-Fault Insurance Act on three distinct grounds. He argued first that the entire Act was null and void because the District of Columbia City Council failed to observe certain procedural requirements of the District of Columbia Self-Government and Governmental Reorganization Act, D.C. Code Ann. Secs. 1-201 to 1-299.7 (1981 & 1985 Supp.) (the Self-Government Act). Specifically, Harley contended that the City Council failed to read the No-Fault Insurance bill twice in substantially the same form before passage. See D.C. Code Ann. Sec. 1-229(a) (1981). The District Court held that Harley lacked standing to challenge the 1982 No-Fault Insurance Act on this ground, concluding that Harley's claim amounted to nothing more than a "generalized grievance alleging abstract injury in nonobservance of the Self-Government Act." 618 F.Supp. at 524.
 
 
 8
 Harley next challenged the limitation imposed by the 1982 No-Fault Insurance Act on his right to bring suit to recover his noneconomic losses. According to Harley, section 6(b)(6) of the Act established an arbitrary and irrational classification between accident victims whose medical expenses exceeded $5,000 and those whose expenses fell below that threshold. The District Court agreed, finding that the $5,000 threshold went far beyond the mere elimination of minor claims for nonserious injuries. According to the Court:
 
 
 9
 By setting an unreasonably high threshold of $5,000 in medical expenses, the City Council unreasonably barred motor vehicle accident victims who suffer serious injuries from recovering for pain and suffering and other noneconomic loss. Such a provision is not rationally related to the purpose of providing "adequate protection" to motor vehicle accident victims.
 
 
 10
 618 F.Supp. at 526. The District Court therefore concluded that section 6(b)(6) was unconstitutional.
 
 
 11
 Because the District Court struck down section 6(b)(6) on equal protection/due process grounds, the Court had no occasion to address Harley's third contention that the $5,000 threshold limitation violated section 602(a) of the Self-Government Act. Section 602(a) prohibits the District of Columbia City Council from enacting any provision relating to the District of Columbia courts or the United States District Court for the District of Columbia. See D.C. Code Ann. Sec. 1-233(a)(4), (a)(8) (1981). Harley had argued to the District Court that section 6(b)(6) of the 1982 No-Fault Insurance Act impermissibly altered the jurisdiction of both federal and local courts in violation of section 602(a) of the Self-Government Act. According to Harley, the City Council's action was ultra vires and therefore void.
 
 
 12
 C. The 1985 Amendments to the No-Fault Insurance Act
 
 
 13
 Prior to oral argument in this case, the District of Columbia City Council substantially amended the 1982 No-Fault Insurance Act. These amendments have made no-fault insurance coverage optional. The amendments also greatly alter the prior restrictions on tort suits for recovery of noneconomic losses arising out of automobile accidents. Only victims who have elected to receive the optional no-fault personal injury protection benefits will ever be statutorily barred from maintaining a tort action based on another person's responsibility for an auto accident. Such a victim now may bring a tort suit only if: (1) the victim suffers substantial permanent damage or disfigurement, or substantial permanent or temporary impairment that prevents the victim from performing his or her usual and customary daily activities for more than 180 continuous days; or (2) the victim's medical and rehabilitation expenses or work loss exceed the amount of personal injury protection benefits available under the victim's insurance policy.
 
 
 14
 Although the amended statute no longer contains the $5,000 medical expenses threshold for bringing a tort suit, the 1985 amendments in no respect render moot the appeal from the District Court's judgment striking down section 6(b)(6) of the unamended 1982 Act. The amended Act became law on March 4, 1986. The 1982 No-Fault Insurance Act still governs the ability to bring tort suits for noneconomic loss arising from accidents occurring before the amendments took effect. Because the 1985 amendments are not retroactive, they do not give victims such as Harley the ability to recover for noneconomic loss stemming from accidents occurring before the amendments became effective.
 
 II. THE EQUAL PROTECTION CHALLENGE
 
 15
 The 1982 No-Fault Insurance Act distinguishes between accident victims whose medical expenses exceed $5,000 and those whose expenses fall below that threshold amount. The latter may not bring tort suits to recover damages for noneconomic loss unless they meet one of the other criteria set forth in section 6(b) of the 1982 Act. Harley argues that this creates an irrational classification in violation of the equal protection principles within the Fifth Amendment's due process clause. Cf. United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 174-76, 101 S.Ct. 453, 459-60, 66 L.Ed.2d 368 (1980) (Fifth Amendment guarantees equal protection of the laws).
 
 
 16
 Except where legislation burdens fundamental rights or employs suspect criteria--neither of which is claimed here--courts apply a lenient standard when faced with an equal protection challenge to social and economic legislation. See, e.g., Association of Civilian Technicians v. FLRA, 756 F.2d 172, 177 (D.C.Cir.1985). Under this lenient standard, section 6(b)(6) of the 1982 No-Fault Insurance Act should be sustained if the classification it creates is "rationally related to achievement of a legitimate state purpose." Western & Southern Life Insurance Co. v. State Board of Equalization, 451 U.S. 648, 657, 101 S.Ct. 2070, 2077, 68 L.Ed.2d 514 (1981). Our equal protection analysis thus involves two distinct questions. We must first determine whether or not the challenged provision of the 1982 No-Fault Insurance Act has a legitimate purpose. Second, we must evaluate whether the District of Columbia City Council could reasonably believe that the use of the challenged classification would promote that purpose. See Western & Southern Life Insurance Co., 451 U.S. at 668, 101 S.Ct. at 2083; Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 461-63, 101 S.Ct. 715, 722-23, 66 L.Ed.2d 659 (1981).
 
 
 17
 The District Court began its analysis by determining the purpose of the 1982 No-Fault Insurance Act. The Court concluded that the purpose of the Act was articulated in Section 2(b) of the Act's "findings and purpose" provision. Section 2(b) states that "It is the purpose of this chapter to provide adequate protection for victims who are injured in the District or who are injured while riding in motor vehicles registered or operated in the District." See D.C.Code Ann. Sec. 35-2101(b) (1985 Supp.). The Court then interpreted the $5,000 threshold as designed to distinguish between victims who are seriously injured and victims who are not, but went on to find that the record lacked any support for the conclusion that an accident victim who incurs less than $5,000 in medical expenses had not suffered a "serious injury." The Court concluded that the $5,000 threshold was not rationally related to the purpose of providing "adequate protection" to accident victims since most accident victims with serious injuries would be unable to recover for pain, suffering and other noneconomic loss because they did not incur $5,000 in medical expenses.
 
 
 18
 We find this analysis flawed in several respects. In the first place, the District Court mischaracterizes the express purpose of the statute. The Court injects its own definition of "adequate protection" into the statute and assumes that the goal of the statute must be to provide full compensation for noneconomic loss to any seriously injured victim. In its statement of findings, however, the District of Columbia City Council explained that before the enactment of the No-Fault Insurance Act victims were "not adequately protected" because they were unlikely to recover even the amount of their "actual losses." See D.C.Code Ann. Sec. 35-2101(a)(1)-(2) (1985 Supp.). The statute's purpose of providing "adequate protection" may therefore be to ensure full recovery of out-of-pocket expenses. Since the challenged classification permits all victims to recover these economic losses, the classification does not impair the statute's purpose.
 
 
 19
 Moreover, even if the City Council intended the phrase "adequate protection" to include full recovery of noneconomic losses by any victim with a serious injury, a classification does not violate equal protection principles merely because the classification is imperfect. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citations omitted). The 1982 Act provides full recovery for noneconomic loss to a large class of seriously injured accident victims. While some seriously injured victims may not be able to recover for pain and suffering, equal protection principles do not require the District to "choose between attacking every aspect of a problem or not attacking the problem at all." Dandridge v. Williams, 397 U.S. at 487, 90 S.Ct. at 1162. Under the 1982 Act, victims with the most serious injuries, measured in terms of medical expenses incurred, are assured of recovering their noneconomic losses. The City Council has thus attacked a major aspect of the problem of compensating accident victims. The $5,000 medical expenses threshold may give rise to an imperfect classification between victims who are seriously injured and those who are not, but that does not make the threshold unconstitutional. We think a legislature could rationally believe that this threshold would at least approximate the line between those who are seriously injured and those who are not. This is all that equal protection principles demand in this case.
 
 
 20
 Most importantly, however, even if the District Court correctly concluded that the challenged classification was not rationally related to the purpose articulated in section 2(b) of the 1982 No-Fault Insurance Act, the Court seriously erred in not sustaining the challenged classification as rationally related to other clearly legitimate government interests. In evaluating the reasonableness of a classification under traditional "rational relation" analysis, a court need not confine itself to the purposes expressly set forth in a statute's "declaration of policy." See United States Department of Agriculture v. Moreno, 413 U.S. 528, 533-35, 93 S.Ct. 2821, 2825-26, 37 L.Ed.2d 782 (1973). A court should not assume that the articulated objectives of a statute are its only objectives. If a classification cannot be sustained in light of the statute's articulated purpose, a court may sustain the classification if it rationally furthers other legitimate state interests.
 
 
 21
 In the present case, the District Court failed to give due consideration to other interests implicit in the provisions of the Act and articulated in its legislative history. Cf. Moreno, 413 U.S. at 534, 93 S.Ct. at 2825 (looking to legislative history for alternative legitimate state interests); Association of Civilian Technicians v. FLRA, 756 F.2d 172, 178 (D.C.Cir.1985) (legislative history revealed that statutory provision represented a compromise between competing objectives). Both the language of the 1982 No-Fault Insurance Act and its legislative history reveal a concern on the part of the City Council to reduce insurance rates while providing insurance benefits that would cover almost all economic losses. Those goals clearly constitute legitimate state interests to which section 6(b) is rationally related.[4]
 
 
 22
 No-fault automobile insurance seeks to compensate a larger class of victims than does the traditional tort system. Under no-fault insurance, a victim recovers his economic losses regardless of who caused the accident. By contrast, the tort system compensates only victims who can prove that another individual was at fault in causing an accident. In theory, no-fault automobile insurance finances the added cost of compensating this larger class of victims from the savings generated by limiting the number of tort suits brought. These savings reflect both unpaid pain and suffering damages and the attorneys' fees and other transaction costs of litigation to establish fault. Thus, keeping premiums affordable while reimbursing all economic losses necessitates some restrictions on tort suits to recover noneconomic losses. See, e.g., O'Connell & Joost, Giving Motorists a Choice Between Fault and No-Fault Insurance, 72 Va.L.Rev. 61, 63-65 (1986). The classification between victims who can and cannot recover through the tort system is therefore rationally related to the legitimate legislative purpose of maintaining low insurance premiums while providing compensation for all economic losses.
 
 
 23
 The 1982 No-Fault Insurance Act represents a policy determination by the District of Columbia City Council concerning how best to allocate the limited proceeds from insurance premiums among the competing needs of all accident victims. While different compromises can be struck, it certainly was not irrational for the District of Columbia City Council to adopt an allocation in which those victims with the greatest injuries should recover more. This court may not substitute its own policy preferences concerning allocation of these limited insurance proceeds. Cf. United States Railroad Retirement Board v. Fritz, 449 U.S. at 175-76, 101 S.Ct. at 459-60; Dandridge v. Williams, 397 U.S. at 487, 90 S.Ct. at 1162. We therefore conclude that the classification drawn by section 6(b)(6) bears a rational relationship to a legitimate governmental purpose and must be sustained under the equal protection principles embodied in the Fifth Amendment due process clause.[5]
 
 
 24
 III. ALLEGED VIOLATIONS OF THE D.C. SELF-GOVERNMENT ACT
 
 
 25
 Because the District Court concluded that section 6(b)(6) created an irrational classification violating equal protection principles, the Court did not address Harley's contention that section 6(b)(6) also modified the jurisdiction of the District of Columbia's local and federal courts in violation of the Self-Government Act. An appellate court, however, can consider any argument made on appeal that supports the judgment of the District Court. See, e.g., Dandridge v. Williams, 397 U.S. at 475 n. 6, 90 S.Ct. at 1156 n. 6; United States v. American Railway Express Company, 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924). We therefore turn to Harley's argument that the City Council exceeded the authority delegated to it by Congress in the Self-Government Act. Section 602 of the Self-Government Act provides:(a) The Council shall have no authority ... to:
 
 
 26
 * * *
 
 
 27
 (4) Enact any act, resolution, or rule with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia Courts);
 
 
 28
 * * *
 
 
 29
 (8) Enact any act or regulation relating to the United States District Court for the District of Columbia....
 
 
 30
 D.C.Code Ann. Sec. 1-233(a) (1981). Harley argues that the $5,000 medical expenses threshold is an element of a court's jurisdiction to adjudicate tort cases and therefore unlawfully alters the jurisdiction of the federal and local courts.
 
 
 31
 Harley's argument spawns a host of procedural conundrums. Although the United States Congress enacted the Self-Government Act, see Pub.L. No. 93-198, 87 Stat. 774 (1973), Harley's challenge to the 1982 No-Fault Insurance Act does not fall within the traditional federal question jurisdiction. See 28 U.S.C. Sec. 1331. For purposes of federal question jurisdiction, Congress has expressly excluded all "laws applicable exclusively to the District of Columbia" from the body of "federal" law. See 28 U.S.C. Sec. 1364. Because the restrictions on the authority of the District of Columbia City Council embodied in sections 602(a)(4) and (a)(8) of the Self-Government Act would appear to apply exclusively to the District of Columbia, we find that sections 602(a)(4) and (a)(8) do not provide the basis for federal question jurisdiction. Cf. Thomas v. Barry, 729 F.2d 1469, 1471 (D.C.Cir.1984) (Section 204(a) of Self-Government statute does not apply exclusively to District and hence does provide basis for federal question jurisdiction).
 
 
 32
 Although Harley's challenge does not arise under federal law, a federal court may sometimes exercise pendent jurisdiction over a "local" law claim presented along with a substantial federal claim.[6] The decision to exercise pendent jurisdiction necessitates a two-part inquiry. First, the court must have power under Article III to adjudicate the pendent claim. Such power exists when a plaintiff presents a sufficiently substantial federal claim, see Hagans v. Lavine, 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974), and the plaintiff's federal and local law claims "derive from a common nucleus of operative fact" and would ordinarily be tried in a single proceeding. See, e.g., United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); Doe v. Board on Professional Responsibility, 717 F.2d 1424, 1427-28 & n.4 (D.C.Cir.1983) (per curiam). If a district court has power to adjudicate a pendent claim, the court must then engage in a second inquiry to determine whether to exercise its discretion to decide the local claim. See, e.g., United Mine Workers v. Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139; Doe v. Board on Professional Responsibility, 717 F.2d at 1428.
 
 
 33
 In the instant case, the District Court never engaged in this two-part analysis because the parties assumed that Harley's challenge arose under federal law. All parties treated jurisdiction as dependent on 28 U.S.C. Sec. 1331 and 28 U.S.C. Sec. 1343(a)(3). See, e.g., Amended Complaint at 3-4. Although the issue of pendent jurisdiction arose for the first time on appeal, we conclude that no purpose would be served in remanding to the District Court to permit it to exercise its discretion in the first instance. We find that Article III power to adjudicate Harley's local law claim clearly exists. Harley's equal protection challenge was substantial enough to confer subject matter jurisdiction, see Financial General Bankshares, Inc. v. Metzger, 680 F.2d 768, 772 (D.C.Cir.1982), and his local claim derives from a common nucleus of operative fact. We also find that the factors which ordinarily guide a district court in deciding whether to exercise pendent jurisdiction counsel toward its exercise in this case.
 
 
 34
 Considerations of judicial economy clearly indicate that this pendent claim should be decided along with the federal claims. All parties have litigated the federal and pendent claims in tandem. This is not a case in which the federal claims have been resolved at an early stage in the litigation and only local claims remain. Moreover, we find that the local law issue can be decided by this court without any additional judicial proceedings, since Harley's challenge raises a purely legal question. The repeal of section 6(b)(6) by the 1985 amendments to the No-Fault Insurance Act makes these considerations of judicial economy especially compelling. We see no point to further prolonging litigation concerning a repealed statute. Further delay will serve neither judicial economy nor fairness to the litigants.
 
 
 35
 In determining whether to exercise pendent jurisdiction, a District Court must also consider whether a complaint poses novel and difficult questions of state law. See Hagans v. Lavine, 415 U.S. at 548, 94 S.Ct. at 1385; United Mine Workers v. Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139; Grano v. Barry, 733 F.2d 164, 169 (D.C.Cir.1984); Doe v. Board on Professional Responsibility, 717 F.2d at 1428; Financial General Bankshares v. Metzger, 680 F.2d at 775-78. Even when considerations of judicial economy suggest the exercise of pendent jurisdiction, this court has often found that exercise to be an abuse of discretion where unsettled legal questions exist and the "desirability of obtaining a 'surerfooted' reading of District of Columbia law ... is obvious." Doe v. Board on Professional Responsibility, 717 F.2d at 1428; see also Financial General Bankshares v. Metzger, 680 F.2d at 775-78. Harley's challenge, however, raises no such novel and unsettled local-law issue to outweigh considerations of judicial economy. The District of Columbia Court of Appeals has previously decided similar challenges alleging that City Council enactments have unlawfully altered the jurisdiction of the courts. See, e.g., District of Columbia v. Greater Washington Central Labor Council, 442 A.2d 110 (D.C.1982), cert. denied, 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983) (workers' compensation act did not redefine authority of local or federal courts); District of Columbia v. Sullivan, 436 A.2d 364 (D.C.1981). While these decisions do not address the specific circumstances presented in this case, they do at least provide a settled interpretation of section 602 of the Self-Government Act and a clear indication of how the District of Columbia courts would apply that section in addressing the merits of Harley's claim. Uncertainty in "state" law therefore does not weight heavily against the exercise of pendent jurisdiction in this case. Given the strong considerations of judicial economy in resolving this case, therefore, we will now address Harley's pendent claim on the merits.
 
 
 36
 Harley contends that section 6(b)(6) violates the Self-Government Act because it alters the civil jurisdiction of the District of Columbia Superior Court by defining its jurisdiction in automobile accident tort cases to extend only to cases where $5,000 in medical expenses have been incurred. Harley thus concludes that the $5,000 medical expenses threshold constitutes a "jurisdictional amount" requirement for jurisdiction in the Superior Court, and thus derivatively for diversity jurisdiction in the federal district court. Harley's argument, however, hinges on an erroneous assumption that the City Council has altered the Superior Court's jurisdiction rather than merely abolishing a cause of action in tort for certain harm proximately caused by a driver's negligence.
 
 
 37
 We cannot accept Harley's premise that a cause of action in tort continues to exist for all injuries arising out of motor vehicle accidents but that the 1982 Act prevents its cognizance in the local and federal courts. Harley correctly points out that the 1982 No-Fault Insurance Act does not purport to change the standards of care governing the conduct of potential defendant drivers. Because the 1982 Act says nothing about the standard of negligence applicable in automobile accident tort cases, Harley argues that the Act does not abolish any tort cause of action. Harley, however, has overlooked the fact that the conduct of a defendant is not the sole criterion for determining whether a cause of action exists. The potential plaintiff's ability to maintain a right of action is equally important.
 
 
 38
 We read section 6(b)(6) as the pro tanto abolition of a cause of action. Section 6 says absolutely nothing about the jurisdiction of the District of Columbia Superior Court or the diversity jurisdiction of the District of Columbia District Court. Section 6 merely sets forth the conditions on which an accident victim may maintain a cause of action for noneconomic loss. The only change in law effectuated by section 6 relates to certain potential plaintiffs who may no longer "maintain a cause of action." D.C.Code Ann. Sec. 35-2105(a) (1985 Supp.); cf. District of Columbia v. Sullivan, 436 A.2d 364, 366 (D.C.1981) (no change in court's jurisdiction where certain violations no longer constitute criminal offenses). Although the partial abolition of a cause of action inevitably affects the cases a court adjudicates, this incidental byproduct does not amount to an alteration of the jurisdiction of the local and federal courts in violation of the Self-Government Act.[7]
 
 
 39
 IV. PROCEDURAL VIOLATIONS IN THE ENACTMENT OF THE 1982
 
 NO-FAULT INSURANCE ACT
 
 40
 Harley's final argument on appeal concerns the City Council's alleged violations of the procedural requirements of the Self-Government Act. See Plaintiffs' Second Amended Complaint paragraphs 38-40. In particular, the Second Amended Complaint asks for a declaration that the failure to read the proposed No-Fault bill twice in substantially the same form prior to enactment as required by D.C.Code Ann. Sec. 1-229(a) (1981) renders the passage of the entire Act null and void. The District Court held that Harley and the other plaintiffs lacked standing to challenge the 1982 No-Fault Insurance Act on this ground. We now affirm.
 
 
 41
 To challenge an action by the government, an individual must be adversely affected by that action. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471-73, 102 S.Ct. 752, 757-59, 70 L.Ed.2d 700 (1982) (requiring "injury in fact"); Capital Legal Foundation v. CCC, 711 F.2d 253, 258 (D.C.Cir.1983). Injury consisting solely of a government's alleged failure to act in accordance with law has been held not to amount to judicially cognizable injury in fact for purposes of Article III standing. See, e.g., Allen v. Wright, 468 U.S. 737, 104 S.Ct. 3315, 3326-27, 82 L.Ed.2d 556 (1984); Capital Legal Foundation v. CCC, 711 F.2d at 258. Harley, however, argues that his standing does not depend solely on any abstract injury from the City Council's failure to obey its procedures but instead rests on his inability to sue to recover the noneconomic losses arising from his automobile accident. This latter injury, which stems from the substantive provisions of the 1982 No-Fault Insurance Act, is certainly judicially cognizable and provides Harley with standing to challenge the substantive provisions of the 1982 Act. Cf. Metzenbaum v. FERC, 675 F.2d 1282, 1287 (D.C.Cir.1982) (judicial review may be appropriate where failure of Congress to follow its own procedures harms persons other than members of Congress). Whether Harley's injury is sufficient to confer standing to enable him also to challenge the City Council's alleged procedural violations depends on whether the injury meets the other constitutional requirements for standing. Thus, while the failure to follow proper procedures does not by itself amount to "injury in fact," a plaintiff may challenge such a failure where he or she has sustained some additional injury and that additional injury independently satisfies the requirements of standing doctrine. Cf. Allen v. Wright, 104 S.Ct. at 3328 n.22.
 
 
 42
 Article III standing requires a plaintiff to show some personal injury that is fairly traceable to the defendant's putatively illegal conduct and likely to be redressed by a favorable decision by the court. See Allen v. Wright, 104 S.Ct. at 3325; Valley Forge, 454 U.S. at 472, 102 S.Ct. at 758. Although Harley has alleged sufficient personal injury from his inability to sue, we find that his injury does not satisfy the "fairly traceable" component of constitutional standing. This component "examines the causal connection between the assertedly unlawful conduct and the alleged injury." Allen v. Wright, 104 S.Ct. at 3326 n.19. For Harley to be accorded standing requires that his injury from the substantive provisions of the 1982 Act must be fairly attributable to the City Council's alleged failure to read the No-Fault bill twice in substantially the same form prior to its adoption.
 
 
 43
 We find this potential connection unduly speculative in the present case. Harley has not alleged that the rereading of the No-Fault bill would have led a sufficient number of Council members to vote against the Act, cf. Allen v. Wright, 104 S.Ct. at 3328-29; Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 42-44, 96 S.Ct. 1917, 1926-27, 48 L.Ed.2d 450 (1976), and the extensive debate surrounding the adoption of the Act suggests rather that the Council members understood the contents of the bill and would have been unlikely to have changed their votes had the Council fully complied with the second-reading requirement. Nor has Harley claimed that the substantive content of the statute might have been different had the required procedures been observed. The procedures allegedly violated here are basically housekeeping measures--one way among many of providing an orderly legislative process. We can divine no causal connection between the procedural violation and the injury flowing from the substantive provisions of the 1982 No-Fault Insurance Act. We conclude, therefore, that the District Court properly dismissed this pendent claim for lack of Article III standing.
 
 V. INTERVENTION
 
 44
 In a related appeal to this court, State Farm Mutual Automobile Insurance Company, Travelers Indemnity Company and the American Insurance Association (collectively referred to as State Farm) seek reversal of the District Court's denial of their motion to intervene in the challenge to the 1982 No-Fault Insurance Act brought by plaintiffs Harley, Dimond, van Susteren and Brent. We hold that State Farm should have been allowed intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure.
 
 
 45
 The factual background of State Farm's appeal can be briefly stated. After the District Court ruled that section 6(b)(6) of the 1982 Act violated the equal protection component of the Fifth Amendment, the District of Columbia filed a motion seeking clarification concerning the effect of this ruling. At the hearing on this motion for clarification, the District of Columbia argued that the effect of finding section 6(b)(6) unconstitutional should be that no accident victim could recover noneconomic losses unless the victim satisfied one of the remaining five exceptions to the general ban on the maintenance of tort suits. The District Court rejected this argument and issued a supplemental Memorandum-Order on January 2, 1985 holding that the effect of its prior decision was to permit tort suits by victims with medical expenses of less than $5,000.
 
 
 46
 Two days later, State Farm filed a motion to intervene as a party defendant. The District Court denied the motion explaining only that "it appear[s] to the Court that the movants' interests are adequately represented by defendants who have filed a notice of appeal of the Court's orders." See Order of January 7, 1985. State Farm appealed, and this court ordered that State Farm's appeal be consolidated with the related appeals by Harley and the District of Columbia seeking review of the District Court's judgment on the validity of the 1982 No-Fault Insurance Act.
 
 
 47
 State Farm seeks intervention as of right under the second prong of Rule 24(a) of the Federal Rules of Civil Procedure. Rule 24(a) provides:
 
 
 48
 Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:
 
 
 49
 * * *
 
 
 50
 (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 51
 Fed.R.Civ.P. 24(a). The second prong of Rule 24(a) contains three prerequisites for intervention as of right: there must be an adequate interest, a possible impairment of that interest and a lack of adequate representation of that interest by existing parties. See, e.g., Environmental Defense Fund, Inc. v. Higginson, 631 F.2d 738, 739 (D.C.Cir.1979).
 
 A. State Farm's Interest
 
 52
 In the instant case, State Farm has an interest relating to the challenge to the 1982 No-Fault Insurance Act, and the disposition of this challenge could well impair State Farm's ability to protect this interest. In its motion to intervene, State Farm alleges that it relied upon an expected savings resulting from the statutory limitations on the ability of automobile accident victims to recover noneconomic losses in calculating the rates to charge for no-fault insurance policies in the District of Columbia. By expanding the class of victims able to recover noneconomic losses, the District Court's judgment exposes State Farm to additional pain and suffering damages, attorneys' fees and other litigation expenses which State Farm did not foresee. State Farm cannot recoup these losses through an increase in premiums because District of Columbia law provides that any new insurance rates can only be applied prospectively. See D.C. Code Ann. Sec. 35-1703(f)(2) (1985 Supp.). State Farm thus satisfies the first two prerequisites for intervention as of right under Rule 24(a)(2).
 
 B. Adequacy of Representation
 
 53
 We must next determine whether State Farm's interest is adequately represented by the existing parties to the litigation. The original burden of showing inadequate representation rests on the applicant for intervention. See, e.g., Natural Resources Defense Council v. Costle, 561 F.2d 904, 911 (D.C.Cir.1977). This burden, however, is not onerous. The applicant need only show that representation of his interest "may be" inadequate, not that representation will in fact be inadequate. See Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); Environmental Defense Fund v. Higginson, 631 F.2d at 740; Natural Resources Defense Council v. Costle, 561 F.2d at 911.
 
 
 54
 We find that State Farm made a legally sufficient showing that representation of its interests may be inadequate. As State Farm points out in its petition to intervene, the District of Columbia has no financial stake in the outcome of the challenge to the 1982 No-Fault Insurance Act. State Farm's application for intervention thus falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances. See, e.g., Natural Resources Defense Council v. Costle, 561 F.2d at 912 n.41; Nuesse v. Camp, 385 F.2d 694, 702-04 (D.C.Cir.1967).
 
 
 55
 A government entity such as the District of Columbia is charged by law with representing the public interest of its citizens. State Farm, on the other hand, is seeking to protect a more narrow and "parochial" financial interest not shared by the citizens of the District of Columbia. The District would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest. Cf. Smuck v. Hobson, 408 F.2d 175, 181 (D.C.Cir.1969). Since State Farm's interest cannot be subsumed within the shared interest of the citizens of the District of Columbia, no presumption exists that the District will adequately represent its interests. See Environmental Defense Fund v. Higginson, 631 F.2d at 740.
 
 
 56
 We note, moreover, that this is not a case where, despite the difference in the interests of State Farm and the District, the District's representation of the general public interest would nonetheless lead the District to make the same legal arguments that State Farm would make. Cf. Blake v. Pallan, 554 F.2d 947, 954-55 (9th Cir.1977) (considering whether interests of present party will lead it to make all of potential intervenor's arguments). State Farm's principal concern involves the severability of section 6(b)(6) and the retroactive application of any decision by this court or the District Court invalidating that section. The results State Farm urges are not necessarily those that the District would advance as in the "public interest." Thus, the District government would face a potential conflict of interest were it to represent both the general interests of its citizens and the financial interests of State Farm. We have previously held that a potential conflict of this sort is sufficient to satisfy a proposed intervenor's "minimal" burden of showing that representation of its interest by existing parties may be inadequate. See Natural Resources Defense Council v. Costle, 561 F.2d at 912-13; Hodgson v. United Mine Workers, 473 F.2d 118, 130 (D.C.Cir.1972); Smuck v. Hobson, 408 F.2d at 181; see also National Farm Lines v. ICC, 564 F.2d 381, 383-84 (10th Cir.1977) (for governmental agency to protect both public and private interests is "impossible" task).
 
 C. Timeliness
 
 57
 Finally, for State Farm to intervene as of right, its application for intervention must also be timely. See, e.g., United States v. American Telephone and Telegraph Company, 642 F.2d 1285, 1294 (D.C.Cir.1980). The District Court in this case did not consider the issue of timeliness when it ruled on State Farm's petition. We have before us all materials necessary to evaluate the timeliness of State Farm's motion, however, and we conclude that judicial economy is best served by deciding the legal question of whether State Farm has made a timely motion under Rule 24(a). See Foster v. Gueory, 655 F.2d 1319, 1324 (D.C.Cir.1981). In the present case, State Farm moved to intervene only two days after the District Court clarified the effect of its ruling that the $5,000 medical expenses threshold violated the Constitution. Until that time, State Farm might reasonably have believed that the District of Columbia's interest in defending the validity of the entire 1982 No-Fault Insurance Act would also ensure that State Farm's interests were adequately protected. While intervention after judgment will usually be denied where a clear opportunity for pre-judgment intervention was not taken, see Moten v. Bricklayers, Masons and Plasterers International Union, 543 F.2d 224, 227 (D.C.Cir.1976), we find that in the instant case the potential inadequacy of representation came into existence only at the appellate stage. Cf. United States v. American Telephone & Telegraph Company, 642 F.2d at 1294 (close relationship between adequacy of representation and timeliness). Moreover, since State Farm seeks to intervene only to participate at the appellate stage and in any further trial proceedings, its intervention will not prejudice any existing party. Cf. Hodgson v. United Mine Workers, 473 F.2d at 129 (considering purpose for which intervention is sought and possibility of prejudice in assessing timeliness of motion to intervene). We therefore find that State Farm's motion was timely.
 
 
 58
 For the above reasons, we conclude that State Farm was entitled to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure. Accordingly, we reverse the District Court's order denying intervention. We also conclude, however, with the benefit of hindsight, that State Farm's participation at the appellate level as an amicus has to date been sufficient to protect its interests. Cf. SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1390 (D.C.Cir.) (en banc), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). We therefore allow intervention only for the limited purpose of participating as a party in any future proceedings.
 
 VI. CONCLUSION
 
 59
 For the reasons stated in this opinion, we hold that the $5,000 medical expenses threshold contained in section 6(b)(6) of the 1982 No-Fault Insurance Act is rationally related to the legitimate interests of the District of Columbia. We further hold that Harley lacks standing to raise his pendent jurisdiction claim based on the alleged failure of the City Council to abide by the procedural requirements of the Self-Government Act and that Harley's other pendent jurisdiction claim should be dismissed on the merits. We also find that State Farm is entitled to intervention as of right in any further proceedings in this case. Accordingly, the judgment of the District Court is reversed in part and affirmed in part.
 
 
 60
 So Ordered.
 
 
 
 [1]
 Specifically, appellants' Supplemental Brief declares:
 If [the amended No-Fault Insurance Act] becomes law, it would have the following effect on the claims of the appellants: A. Ms. Dimond's claim would be moot. B. Ms. van Susteren's and Mr. Harley's claims that they must purchase liability insurance for accidents outside the District of Columbia would not become moot, but they would not pursue their claims on appeal in light of the general requirement that they purchase liability insurance for accidents inside and outside the District of Columbia. C. Mr. Brent's claim would not be rendered moot, but in light of the optional nature of no-fault insurance under [the amended Act], he would no longer maintain on appeal that the District's insurance scheme violated his First Amendment rights.
 D. Mr. Harley's claims that the $5,000 medical expense threshold was an unconstitutional denial of equal protection, that the previous Insurance Act was enacted in violation of the procedures mandated by the Self-Government Act, and that the previous Insurance Act violates the prohibition in the Self-Government Act against altering the jurisdiction of the Courts of the District of Columbia would be unaffected by [the amended Act] becoming law.
 Supplemental Brief for the Appellants at 1-2.
 
 
 [2]
 Section 6 of the 1982 No-Fault Insurance Act states:
 (a) Restriction.--Except as provided in subsection (b) of this section, no person may maintain a civil action based on liability against any other person, with respect to an injury as to which personal injury protection benefits are payable under this chapter.
 (b) Exceptions to restriction.--The provisions of subsection (a) of this section do not apply if:
 (1) A person may be liable for damages for any medical and rehabilitation expenses of a victim and any work loss of a victim in excess of the personal injury protection benefits available therefor under this chapter;
 (2) A person may be liable to the survivors of a victim for loss and noneconomic loss sustained as the result of death arising out of the maintenance or use of a motor vehicle and recoverable under applicable law;
 (3) A person may be liable for any loss and noneconomic loss arising out of the maintenance or use of a motor vehicle with intent to injure himself or herself or any other person;
 (4) A person may be liable for noneconomic loss, in accordance with otherwise applicable law, cause a victim and arising from the maintenance or use of a motor vehicle if the victim suffered an injury directly resulting in substantial permanent scarring or disfigurement; substantial and medically demonstrable permanent impairment which has significantly affected the ability of the victim to perform his or her professional activities or usual and customary daily activities; or a medically demonstrable impairment that prevents the victim from performing all or substantially all of the material acts and duties which constitute his or her usual and customary daily activities for more than 180 continuous days;
 (5) A person may be liable for any loss or noneconomic loss, in accordance with otherwise applicable law, if, at the time of the accident, that person is an owner of a motor vehicle involved in that accident and required insurance was not in effect with respect to that motor vehicle; or
 (6) A person may be liable for any noneconomic loss if medical expenses of a victim or his or her survivors exceeds $5,000, inclusive of diagnostic x-ray costs. This amount shall be adjusted annually to reflect changes in cost of living index, pursuant to rules issued by the Superintendent.
 D.C.Code Ann. Sec. 35-2105 (1985 Supp.).
 
 
 [3]
 In light of counsels' representation concerning the issues remaining on appeal after the 1985 amendments to the No-Fault Insurance Act, this court will not discuss all aspects of the District Court's opinion. See supra note 1
 
 
 [4]
 None of the parties to this appeal dispute that no-fault insurance is a legitimate means of guaranteeing that all victims injured in automobile accidents recover their out-of-pocket expenses regardless of fault. This court has not been asked to rule that no-fault insurance in general is unconstitutional. See Brief and Reply Brief of Appellants at 1 & n.1. The only challenge in this case is to the relationship between the specific classifications drawn by the 1982 No-Fault Insurance Act and the purpose of that Act
 
 
 [5]
 Because we find that the District Court erred in striking down section 6(b)(6) of the 1982 No-Fault Insurance Act, we need not reach the question of whether the District Court should have excised the monetary threshold from the statute and left the remaining thresholds intact rather than permitting all victims of automobile accidents to sue to recover their noneconomic losses
 
 
 [6]
 Although the District of Columbia is not a state, this court has treated it as such for purposes of applying the doctrine of pendent jurisdiction. See, e.g., Doe v. Board on Professional Responsibility, 717 F.2d 1424 (D.C.Cir.1983) (per curiam); Financial General Bankshares, Inc. v. Metzger, 680 F.2d 768, 772 (D.C.Cir.1982)
 
 
 [7]
 Given our reading of section 6(b)(6) as the pro tanto abolition of a cause of action, we easily reject Amicus Curiae John Doe's contention that section 6(b)(6) abrogates the right to a jury trial in violation of the Seventh Amendment. Cf. Mountain Timber Co. v. Washington, 243 U.S. 219, 235, 37 S.Ct. 260, 263, 61 L.Ed. 685 (1917) (no violation of Seventh Amendment where statute abolishes a right of action, leaving nothing for trial by jury)